ILLINOIS CEREAL MILLS, INC., Plaintiff-Appellee, *v.* THE DEPARTMENT OF REVENUE, Defendant-Appellant.

Fourth District   No. 12959

Opinion filed April 15, 1976.

SIMKINS, J., dissenting.

William J. Scott, Attorney General, of Chicago (Stephen R. Swofford, Assistant Attorney General, of counsel), for appellant.

Massey, Anderson & Gibson, of Paris (Richard L. James, of counsel), for appellee.

Mr. JUSTICE GREEN delivered the opinion of the court:

In April of 1973, defendant, Department of Revenue of the State of Illinois (Department), audited the books of plaintiff, Illinois Cereal Mills, Inc. After the completion of the audit, Department contended that certain taxes were due. At issue here is question of the Department's claim of amounts owed by plaintiff to the Department under the Use Tax Act (Ill. Rev. Stat. 1973, ch. 120, par. 439.1 *et seq.*) for the purchase of certain gas fired boilers. At a subsequent hearing before the Department, it made final assessment against plaintiff. Plaintiff then filed a complaint for administrative review in the Circuit Court of Edgar County. After

hearing, that court reversed the assessment. The Department appeals. We reverse the judgment of the circuit court and affirm the ruling of the Department.

In dispute in this case is a construction of section 2(a) of the Use Tax Act (Ill. Rev. Stat. 1973, ch. 120, par. 439.2(a)) which at all times pertinent provided:

" 'Pollution control facilities' means any system, method, construction, device or appliance appurtenant thereto sold or used or intended for the primary purpose of eliminating, preventing, or reducing air and water pollution as the term 'air pollution' or 'water pollution' is defined in the 'Environmental Protection Act', enacted by the 76th General Assembly, or for the primary purpose of treating, pretreating, modifying or disposing of any potential solid, liquid or gaseous pollutant which if released without such treatment, pretreatment, modification or disposal might be harmful, detrimental or offensive to human, plant or animal life, or to property.

The purchase, employment and transfer of such tangible personal property as pollution control facilities is not a purchase, use or sale of tangible personal property."

The evidence was undisputed that plaintiff, in operating a corn processing mill, uses large amounts of steam in drying grain and heating its plant. Prior to installing the gas fired boilers, plaintiff obtained this steam from coal fired boilers which were in satisfactory condition to continue supplying plaintiff's steam needs indefinitely. Plaintiff had come under criticism for the pollution caused by burning the coal to heat the boilers. Because of criticism by the Environmental Protection Agency, plaintiff tried putting filters and fly ash collectors in the chimney, changing the air mix, and changing the type of coal used. All of these procedures were expensive but the pollution problem remained. Under threat of action by the Environmental Protection Agency, plaintiff installed the gas fired boilers and secured a permit for natural gas on an interruptable basis. The coal fired burners remained in position and were used on days when gas was not available. The use of the gas fired boilers neither aided plaintiff's productivity nor reduced its costs of operation.

In a memorandum explaining its ruling, the circuit court noted that contemporaneous with the enactment of section 2(a) of the Use Tax Act, the legislature also enacted section 21a—1 of the Revenue Act of 1939 (Ill. Rev. Stat. 1973, ch. 120, par. 502a—1) which declared it to be the public policy of the State that "pollution control facilities" be valued for property tax purposes in relation to their "economic productivity to their owners." That court felt that these bills indicated a legislative intent to

encourage business and industry to make expenditures to comply with the environmental requirements of government agencies. Since the evidence is undisputed that plaintiff's reason for installing the gas fired boilers here was to meet these requirements, and since plaintiff received no economic benefit in making the installation, the circuit court ruled that plaintiff was entitled to the exemption of section 2(a). Plaintiff requests that we adopt this interpretation of the statute and affirm the judgment of the circuit court.

The Department, on the other hand, seeks a strict construction of section 2a. It argues that the circuit court confuses the "primary purpose" of the "device" with the reason why the plaintiff elected to install the "device." The Department contends that the "primary purpose" of the gas fired boilers is to produce steam even though plaintiff chose to install them solely because they produce steam in a less polluting way than do those fired by coal. The Department maintains that the plain meaning of the section negates plaintiff's claim to exemption and that this is supported by its ruling dated November 8, 1968, which provides:

"5. A gas-fired boiler used to produce steam for a manufacturing operation * * * does not qualify for the exemption even though it was installed as a replacement for a coal-fired boiler to which local governmental officials objected because of its air-polluting effects. The reason is that the purpose of reducing air pollution in such a case is secondary to the primary purpose of producing heat."

■■ In reliance upon this ruling, the Department's hearing officer found that the primary purpose of the gas fired boilers was to produce heat. He recommended that exemption be denied. Such findings of an administrative agency are held, on review, to be prima facie correct. (Ill. Rev. Stat. 1973, ch. 110, par. 274.) Here, however, the underlying facts are undisputed and the hearing officer based his finding of the purpose of the boilers on the Department's interpretation of section 2a. The issue is a question of law. If the Department's interpretation of the statute is correct, the circuit court's judgment should be reversed and the Department's decision affirmed. If plaintiff's interpretation is correct, the judgment should be affirmed. The question is a close one.

The gas fired boilers provided steam to dry grain and to heat the plant. In doing so they produced some pollution but of a lesser amount than the coal fired ones: The words in section 2a, "sold or used or intended for the primary purpose of" reducing or eliminating certain types of pollution does not seem to refer to equipment like the gas fired boilers even though they were installed because they were less polluting than the equipment formerly used. Rather the words refer to equipment such as precipitators, filters, and smoke stacks which have no substantial function in the

manufacturing or processing of a product other than to abate the pollution caused by the plant operation. We, therefore, rule the interpretation placed on the statute by the hearing officer to be correct.

■■ The legislative intent to encourage expenditures that would result in environmental improvement and to soften the burden on those who are required to make such expenditures is countered by two rules of construction. One is that when, as here, legislation is ambiguous, weight is given to interpretation given by an administrative agency, (*Martin Oil Service Co. v. Department of Revenue*, 49 Ill. 2d 260, 273 N.E.2d 823.) Thus, the Department ruling of November 8, 1968, supports its contention. The other rule of construction is that "In determining whether property falls within a statute of exemption, doubts will be resolved in favor of taxation." *Heller v. Fergus Ford, Inc.*, 59 Ill. 2d 576, 579, 322 N.E.2d 441, 442.

The judgment of the circuit court is accordingly reversed and the decision of the Department of Revenue affirmed.

Circuit court reversed. Department of Revenue affirmed.

TRAPP, P. J., concurs.

Mr. JUSTICE SIMKINS, dissenting:

I dissent. The hearing officer found that the "primary purpose" of the gas fired boilers was to produce heat. It seems clear to me that the primary purpose was to eliminate pollution. Appellee concededly had a system of coal fired boilers which were entirely adequate to their function which was identical to the function performed by the new equipment. It is also clear that appellee neither sought nor gained any economic benefits from its decision to purchase the gas fired boilers. The "primary purpose" and the "reason" for the purchase were identical. The gas fired boilers are a system or a method, within the purview of the statute, and, in my view, were primarily used for the elimination of the pollution problem. Had it not been for that problem the gas fired boilers would not have been used. I would affirm the judgment of the circuit court.