CENTRAL ILLINOIS LIGHT COMPANY *et al.*, Plaintiffs-Appellees, *v.* THE DEPARTMENT OF REVENUE, Defendant-Appellant.

Third District   No. 82—869

Opinion filed September 12, 1983.

Neil F. Hartigan, Attorney General, of Springfield (Paul J. Bargiel, of Doss, Puchalski, Keenan & Bargiel, Ltd., Special Assistant Attorney General, of counsel), for appellant.

Thomas Atherton, of Frings, Bagley, Atherton & Clark, of Pekin, and Michael R. Levinson, James R. Browne, and Thomas F. Dean, all of Kirkland and Ellis, of Chicago, for appellees.

JUSTICE SCOTT delivered the opinion of the court:

This case is before this court on the appeal of the Department of Revenue of the State of Illinois (the Department) from a judgment of the circuit court of Tazewell County which reversed an administrative decision imposing sales and use taxes on Central Illinois Light Company (CILCO) as to purchase of certain items which CILCO claims to be components for various pollution control facilities.

The facilities in question are a closed cycle cooling pond including a dam and pumphouse and an electronic scale at a dry ash collection facility.

On those purchases where CILCO was to have paid use tax directly to the Department, CILCO did not pay the tax because of its claim that the facilities in question were for pollution control and hence such purchases were tax exempt. On those purchases where CILCO paid use taxes to the supplier, the suppliers in turn paid an equal amount of tax to the Department. At CILCO's request each supplier issued CILCO an unconditional promissory note in the amount of the tax paid and at CILCO's expense and direction filed a claim for credit for the retailers' occupation tax. This procedure was followed in an effort to meet the requirement of the Retailers' Occupation Tax Act, which provides that a retailer may be granted a claim for credit or refund where it appears that the claimant has unconditionally repaid the purchaser any amount of tax collected from the purchaser. See Ill. Rev. Sat. 1981, ch. 120, par. 445.

A further recitation of facts will be set forth as they become pertinent to the determination of the issues presented in this appeal. We are mindful that in addition to CILCO there are other parties (suppliers) who are claiming a tax refund. In determining the issues presented in this appeal we will refer only to the claimant CILCO; however, the determination of the issues will apply to all claimants unless otherwise specified.

The Department argues that CILCO is not entitled to the tax exemption contained in section 2a of the Use Tax Act (Ill. Rev. Stat. 1979, ch. 120, par. 439.2a) because the Duck Creek Station cooling pond and the E. D. Edwards electronic truck scale do not qualify as pollution-control facilities.

Section 2a provide as follows:

" 'Pollution control facilities' means any system, method, construction, device or appliance appurtenant thereto sold or used or intended for the primary purpose of eliminating, preventing, or reducing air and water pollution as the term 'air pollution' or 'water pollution' is defined in the 'Environmental Protection Act,' enacted by the 76th General Assembly, or for the primary purpose of treating, pretreating, modifying, or disposing of any potential solid, liquid or gaseous pollutant which if released without such treatment, pretreatment, modification or disposal might be harmful, detrimental or offensive to human, plant or animal life, or to property. ***." Ill. Rev. Stat. 1979, ch. 120, par. 439.2a.

Section 2a of the Use Tax Act has an identical counterpart in the Retailers' Occupation Tax Act. (See Ill. Rev. Stat. 1979, ch. 120, par. 440a.) The Revenue Act of 1939 also gives favored treatment to pollution control facilities in the property tax provisions of our Revenue Act of 1939. See Ill. Rev. Sat. 1979, ch. 120, par. 502a—1 *et seq.*

Another statutory provision pertinent to CILCO's claim for tax exemption is section 21a—5 of our Revenue Act of 1939, which provides as follows:

"Sec. 21a—5. Certification procedure. Application for a pollution control facility certificate shall be filed with the Pollution Control Board. The application shall be filed in such manner and in such form as may be prescribed by regulations issued by the Pollution Control Board, and shall contain appropriate and available descriptive information concerning anything claimed to be entitled in whole or in part to tax treatment as a pollution control facility as defined in this act. If it is found that the claimed facility or relevant portion thereof is a pollution control

facility as defined herein, the Pollution Control Board, acting through its Chairman or his specifically authorized delegate, shall enter a finding and issue a certificate to that effect. Such certificate shall require tax treatment as a pollution control facility in conformity with this State's taxing provisions providing for such treatment, but only for the portion certified if only a portion be certified. The effective date of a certificate shall be the date of the making of the application for the certificate or the date of the construction of the facility, whichever is later." Ill. Rev. Stat. 1979, ch. 120, par. 502a—5.

The foregoing provision section 21a—5 requires that a facility certified by the Environmental Protection Agency pursuant to the provisions of the Act shall be treated as a pollution control facility for taxation purposes.

In the instant case the Duck Creek cooling pond and the E. D. Edwards fly ash collection station, including the electronic scale, were certified by the Environmental Protection Agency as having as their primary purpose pollution control. CILCO argues that such certification is conclusive evidence that the facilities' purpose is pollution control and hence it is entitled to the tax exemptions contained in section 2a of the Use Tax Act. Ill. Rev. Stat. 1979, ch. 120, par. 439.2a.

■ The Department argues that section 21a—5 of the Revenue Act of 1939 is limited in its application to providing exemption from only *ad valorem* real and personal property taxes. Stated otherwise, it is the Department's contention that the section has no application to excise taxes such as the retailers' occupation tax and the use tax.

The trial court disagreed, as we do, with the argument of the Department.

While section 21a—5 is found in those provisions of the Revenue Act of 1939 which are concerned with real and personal property taxation, we deem the following portion of the section to be instructive:

"Such certificate shall require tax treatment as a pollution control facility in conformity with the State's taxing provisions providing for such treatment ***." Ill. Rev. Stat. 1979, ch. 120, par. 502a—5.

We note that the foregoing language refers to "this State's taxing provisions." The word "provisions," being in the plural, necessitates an interpretation that the tax treatment referred to was to be from various taxes, *i.e.*, the use tax and the retailers' occupation tax as well as from property taxation. This argument is buttressed by the observation that in addition to the definition of pollution control facilities as contained in the real and personal property tax act (Ill. Rev.

Stat. 1981, ch. 120, par. 502a—2), the same definitions appear in the Use Tax Act (Ill. Rev. Stat. 1981, ch. 120, par. 439.2a) and the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1981, ch. 120, par. 440a). It would be incongruous to conclude that the cooling pond and the truck scales conformed to one definition for the purpose of one tax but did not conform to identical definitions for the purpose of other taxes.

Having concluded that the pollution control facilities are exempt from the imposition of use taxes by virtue of statutory enactments, it may well be unnecessary to consider whether the cooling pond and truck scales are pollution control facilities. The Department, however, argues so strenuously that they do not qualify as such facilities we feel constrained to examine the Department's contention.

The evidence discloses that the Duck Creek cooling pond is an artificial lake created for the purpose of eliminating thermal pollution caused by the discharge of heated cooling water from the Duck Creek facility. Originally heated cooling water from the Duck Creek Station was to have been discharged into the Illinois River. Water would have been taken from the river, circulated in such a manner as to cool turbine condensers and then discharged back into the river. United States and Illinois environmental protection agencies established requirements which prevented CILCO from discharging heated water directly into the river. CILCO as the result of these requirements or regulations constructed a cooling pond into which the heated water could be discharged. It is true as the Department asserts that the water in the pond after being cooled is then again circulated through the plant for the purpose of cooling its turbine condensers. The evidence establishes that the primary purpose of the cooling pond is to capture heated water and to prevent it from getting into the Illinois River in an overheated condition. Had there been no regulations preventing the disposal of heated water into the river there would have been no cooling pond. Its primary purpose was and is to prevent pollution.

The dry fly ash collection facility is designed to remove fly ash from the hoppers of three boilers. Fly ash is a pollutant, and its discharge into the environment is governed by United States and Illinois pollution control regulations. CILCO removes the ash from hoppers and hauls it away in trucks for safe disposal. The electronic truck scale was purchased in order to weigh trucks loaded with ash so that compliance will be had with highway weight requirements. We again have a situation where if it were not for environmental pollution regulations there would be no need for the scales.

■■ The Department in support of its contention that the primary purpose of the cooling pond and scales is not for pollution control re-

lies on the case of *Illinois Cereal Mills, Inc. v. Department of Revenue* (1976), 37 Ill. App. 3d 379, 346 N.E.2d 69. In *Cereal Mills* it was the finding of the court that two gas boilers did not have as their primary purpose pollution control even though they were installed at the request of the Environmental Protection Agency to replace coal-fired boilers which caused pollution. The case of *Cereal Mills* is distinguishable from the situation in the instant case because the primary purpose of the gas-fired boilers was to produce heat, not to prevent pollution. The fact that the new boilers decrease air pollution was an incidental purpose. In *Cereal Mills* boilers were an absolute necessity, where in the instant case CILCO, were it not for pollution control regulations, could have operated their plant without the cooling pond and truck scales.

■ The Department lastly argues that CILCO's suppliers are not entitled to claim for credit or refund of use taxes because the issuance of promissory notes by them to CILCO does not satisfy the requirement of the refund statute that claimant bear the burden of the tax. We disagree.

Our Revenue Act of 1939 provides that a retailer may be granted a claim for credit or refund where it appears that the claimant has unconditionally repaid to the purchaser any amount collected from the purchaser. (Ill. Rev. Stat. 1981, ch. 120, par. 445.) Such a requirement prevents a retailer from being unjustly enriched at the expense of a customer who may have no means of recovering a tax refund if the retailer is successful in obtaining one. The supplier's use of promissory notes in the instant case satisfies and prevents the unjust enrichment purpose of our Revenue Act of 1939. If CILCO is entitled to a refund of the payment of use taxes a demand will be made for the payment of the notes which will prevent the unjust enrichment of the supplier.

For the reasons stated the judgment of the circuit court of Tazewell County is affirmed.

Affirmed.

HEIPLE and BARRY, JJ., concur.