LeTOURNEAU RAILROAD SERVICES, INC., Plaintiff-Appellant, v. THE DEPARTMENT OF REVENUE, Defendant-Appellee.

Fourth District   No. 4—84—0854

Opinion filed July 11, 1985.—Rehearing denied August 7, 1985.

John L. Swartz, of Giffin, Winning, Lindner, Cohen & Bodewes, P.C., of Springfield, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Jill Wine-Banks, Solicitor General, and Rita M. Novak, Assistant Attorney General, of Chicago, of counsel), for appellee.

JUSTICE TRAPP delivered the opinion of the court:

LeTourneau Railroad Services, Inc., plaintiff, filed claims for the refund of taxes paid pursuant to the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1983, ch. 120, par. 440 *et seq.*) and Municipal Retailers' Occupation Tax Act (Ill. Rev. Stat. 1983, ch. 24, par. 8—11—1 *et seq.*). The refund was sought on the theory that the taxes had been erroneously collected and that the "rolling stock" exemption of the acts precluded tax liability. The Department of Revenue determined that the exemption did not apply and denied the refund. On administrative review, the circuit court affirmed. Plaintiff appeals.

At issue is the applicability of the tax acts' "rolling stock" exemption to the sale of an instrument known as a Marathon LeTourneau Diesel Electric Model 2682CH LeTro Porter. Section 2 of the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1983, ch. 120, par. 441) provides, in pertinent part:

"A tax is imposed upon persons engaged in the business of selling tangible personal property at retail at the rate of 5% of the gross receipts from such sales of tangible personal property made in the course of such business, excluding, however, from those gross receipts, *** (c) the proceeds from sales of tangible personal property to interstate carriers for hire for use as rolling stock moving in interstate commerce."

Section 8—11—1 of the Municipal Retailers' Occupation Tax Act incorporates this exemption by reference.

A tax regulation in effect at the time of the subject sale defined the "rolling stock" exemption in the following terms:

"The term 'Rolling Stock' includes the transportation vehicles of any kind of interstate transportation company for hire (railroad, bus line, air line, trucking company, etc.) ***. Railroad 'rolling stock' includes all railroad cars, passenger and freight, and locomotives (including switching locomotives) or mobile power units of every nature for moving such cars, operating on railroad tracks and includes all property purchased for the purpose of being attached to such cars or locomotives as a part thereof. The exemption includes some equipment (such as con-

tainers called trailers) which are used by interstate carriers for hire, loaded on railroad cars, to transport property, but which do not operate under their own power and are not actually attached to the railroad cars. The exemption does not apply to fuel nor to jacks or flares or other items that are used by interstate carriers for hire in servicing the transportation vehicles, but that do not become a part of such vehicles, and that do not participate directly in some way in the transportation process. The exemption does not include property of an interstate carrier for hire used in the company's office, such as furniture, typewriters, office supplies and the like." Article 2, section 8, Illinois-Retailers' Occupation Tax-Articles.

In early 1979, plaintiff sold and delivered to Pennsylvania Truck Lines, Inc., one new LeTro Porter. Pennsylvania Truck Lines paid the purchase price of $232,912 and a total of $11,459.27 in Illinois retail occupation taxes. Plaintiff subsequently refunded the tax paid by Pennsylvania Truck Lines by irrevocable credit, and filed a claim for refund with the Department of Revenue.

The LeTro Porter is a rubber-tired, self-propelled machine which is operated from a cab located on the vehicle. It is used primarily to load and unload containerized freight from rail cars, and may perform the same functions with reference to semi-trucks. The machine is not fixed to railroad tracks, but operates in the rail yard alongside the tracks. It moves containerized freight within the rail yard and is not equipped for either rail or highway travel. The machine in question has never left the rail yard where it was delivered in 1979.

The LeTro Porter functions much like a forklift, although it utilizes a claw mechanism, rather than a fork, to secure the freight prior to moving. In performing its functions, the machine approaches the train perpendicularly. An employee who is located on the ground guides the machine operator in securing the fixture to the freight container. The arms of the front fixture, which are padded, are slipped under the bottom rail of the trailer, wrapped around it, and secured. The LeTro Porter, carrying the container, is backed away from the train and then proceeds to place the freight along the side of the rail car or in another location within the yard. It travels a maximum range of 75 yards to three-quarters of a mile, and at a maximum speed of seven or eight miles per hour.

Pennsylvania Truck Lines used the LeTro Porter exclusively for the movement of freight which is in interstate commerce. The truck line is an interstate carrier for hire operating under a certificate of authority issued by the Interstate Commerce Commission. Although

there are other methods available for the loading and unloading of containerized freight from rail cars, the LeTro Porter performs the task with particular effectiveness and is deemed essential by its user.

Following an evidentiary hearing on plaintiff's claim for refund, the Department of Revenue denied the claim in a final agency determination. As a preliminary matter, the Department found that the LeTro Porter aided the efficient transportation of goods in commerce and that the freight moved by the LeTro Porter did in fact move in interstate commerce. The Department concluded that the "rolling stock" exemption did not apply, however, because the LeTro Porter was neither a transportation vehicle nor property to be permanently attached to a transportation vehicle. The written agency determination also noted that, while the LeTro Porter aided the movement of interstate freight, other methods existed for accomplishing the same tasks, without the aid of the LeTro Porter. On administrative review, the circuit court found that the agency determination was not against the manifest weight of the evidence.

On appeal, plaintiff contends that the "rolling stock" exemption properly applies to the sale of the LeTro Porter, and therefore the decisions of the Department and the circuit court were erroneous. In support of this position, plaintiff cites *Burlington Northern, Inc. v. Department of Revenue* (1975), 32 Ill. App. 3d 166, 336 N.E.2d 170. Plaintiff maintains that *Burlington Northern* held railroad switching engines were rolling stock, and by analogy, the LeTro Porter must also be classified as rolling stock. According to the plaintiff, the LeTro Porter fulfills the same function as a switching engine, with the difference that it moves freight from train to truck rather than from train to train.

As the Department notes, however, *Burlington Northern* did not decide whether a switching engine was rolling stock. Rather, it *assumed* that a switching engine was rolling stock and decided only whether the particular engines had the requisite interstate nexus. Moreover, the difference between the LeTro Porter and a railroad switching engine is substantial. The switching engines in *Burlington Northern* traveled on railroad tracks and were capable of venturing wherever the tracks would allow them to go. The LeTro Porter does not travel on railroad tracks, yet also is not suited to highway travel. In contrast to the vehicles at issue in *Burlington Northern*, the LeTro Porter involved here has never left the confines of the rail yard where it was delivered.

In response to this analysis, plaintiff cites authority which suggests that even a vehicle which travels exclusively between points in

Illinois may qualify for the "rolling stock" exemption. (See *Burlington Northern, Inc. v. Department of Revenue* (1975), 32 Ill. App. 3d 166, 336 N.E.2d 170.) Assuming that this principle is correct, however, it plainly does not preclude inquiry into whether the item sold qualifies as rolling stock. In the instant case, there is no question that the machine aids the movement of goods in interstate commerce, and the agency so found. The question remains whether the LeTro Porter is properly characterized as rolling stock. The agency determined that it was not.

The LeTro Porter is not a transportation vehicle such as a railroad car or a semi-truck, for its movement is minimal and is merely incidental to its principal functions of loading and unloading freight. Moreover, it does not transport freight from one geographical location to another, but merely moves the freight within the confines of the rail yard. It is not property which "in its ordinary use is taken from one part of the line to another" (*Ohio & Mississippi R.R. Co. v. Weber* (1880), 96 Ill. 443, 448), nor "goods which are mobile and which are of a type normally used in more than one jurisdiction." (See Ill. Rev. Stat. 1983, ch. 26, par. 9—103(3).) The LeTro Porter is neither a transportation vehicle nor an instrument intended to be attached to a transportation vehicle.

■ ■ Grants of tax exemption are strictly construed against the taxpayer and in favor of the taxing power, and the burden is upon the one claiming the exemption to clearly demonstrate that the property comes within the exemption. (*Burlington Northern, Inc. v. Department of Revenue* (1975), 32 Ill. App. 3d 166, 336 N.E.2d 170.) On appeal from a judgment of the circuit court in administrative review, the appellate court must affirm the agency ruling unless the findings and decision of the administrative agency are found to be contrary to the manifest weight of the evidence. (*Derringer v. Illinois Civil Service Com.* (1978), 66 Ill. App. 3d 239, 383 N.E.2d 771.) Having reviewed the record, this court concludes that the administrative decision is not against the manifest weight of the evidence. The Department's determination that plaintiff was not entitled to a tax refund by virtue of the "rolling stock" exemption is adequately supported by the record. We therefore affirm.

Affirmed.

McCULLOUGH and MORTHLAND, JJ., concur.