BEELMAN TRUCK COMPANY, Plaintiff-Appellee, v. JEROME COSEN-
TINO, as State Treasurer, *et al.*, Defendants-Appellants.

Fifth District   No. 5—92—0036

Opinion filed December 14, 1993.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Deborah L. Ahlstrand, Assistant Attorney General, of Chicago, of counsel), for appellants.

Stephen R. Wigginton, of Jenkins, Kling & Sauerwein, of St. Louis, Missouri, for appellee.

JUSTICE WELCH delivered the opinion of the court:

The undisputed facts show that the plaintiff, Beelman Truck Company (Beelman), is an authorized interstate transporter of bulk commodities and hazardous waste. For the most part, the only hazardous waste transported by Beelman is contaminated soil. Beelman transports this material in semi-tractor trailer rigs known as "dump trucks." To reduce the potential peril involved in transporting such dangerous matter, Beelman instituted several safety measures. First, Beelman lines its dump truck beds with a plastic liner to prevent contaminated soil from leaking out during transportation. Second, the dump trucks are accompanied 80% of the time by one of three pickup trucks known as "escort trucks." These escort trucks are used to carry the plastic liner, gloves, hardhats, respirators, and other safety equipment. Not only are these supplies used in the loading and unloading of the waste, but in the event of an accident, the escort truck drivers don their protective gear and work to contain any spill.

On June 29, 1990, Beelman paid $11,111 in use taxes after an audit by the Illinois Department of Revenue of Beelman's tax returns for July 1, 1987, through December 31, 1989, determined that $2,119 in taxes was owed on the escort trucks and that $8,992 in taxes was owed on the plastic liner. Beelman concurrently filed its notice of payment under protest pursuant to section 2a.1 of the State Officers and Employees Money Disposition Act (Ill. Rev. Stat. 1989, ch. 127, par. 172a (now 30 ILCS 230/2a.1 (West 1992))).

On July 26, 1990, Beelman filed in the circuit court of St. Clair County a verified complaint against defendants Jerome Cosentino (then Illinois State Treasurer) and Roger Sweet (then Director of Revenue) (State), pursuant to section 2a of the State Officers and Employees Money Disposition Act (Ill. Rev. Stat. 1989, ch. 127, par. 172 (now 30 ILCS 230/2a (West 1992))), seeking declaratory and injunctive relief and damages. On September 17, 1990, Beelman amended its verified complaint to allege that the escort trucks and plastic liner were tax-exempt "pollution control facilities" under the Use Tax Act (Ill. Rev. Stat. 1989, ch. 120, par. 439.2a (now 35 ILCS 105/2a (West 1992))). The State filed its answer on November 14, 1990, denying that the property was tax exempt.

On October 16, 1991, Beelman filed a motion for summary judgment pursuant to section 2—1005 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005 (now 735 ILCS 5/2—1005 (West 1992))) and an appendix of supporting materials,

which contained, *inter alia,* the affidavit of Ron Gjerstad, Beelman's vice-president of sales and operations, a copy of Beelman's waste contingency plan, photographs of a dump truck lined with plastic, billing invoices, and hazardous waste manifests. Although the State filed a cross-motion for summary judgment on October 21, 1991, it offered no affidavits or other evidence to controvert the evidence adduced by Beelman in support of its motion for summary judgment.

On December 11, 1991, the circuit court of St. Clair County granted Beelman's motion for summary judgment, concluding that both the escort trucks and the plastic liner were tax-exempt pollution control facilities. The circuit court specifically found that the items were "a method or device used for the primary purpose of eliminating, preventing or reducing air and water pollution." The State now appeals that decision.

There are essentially two issues raised by this appeal: (1) whether the escort trucks and plastic liner are tax-exempt pollution control facilities under the Use Tax Act and (2) whether summary judgment was appropriately granted. We answer yes to both questions and affirm the circuit court's decision in favor of Beelman.

■ In relevant part, the Use Tax Act imposes a tax "upon the privilege of using in this State tangible personal property." (Ill. Rev. Stat. 1989, ch. 120, par. 439.3 (now 35 ILCS 105/3 (West 1992)).) In 1967, the legislature amended the Act to create a pollution control facilities tax exemption, which provides that the "purchase, employment and transfer of such tangible personal property as pollution control facilities is not a purchase, use or sale of tangible personal property." (Ill. Rev. Stat. 1989, ch. 120, par. 439.2a (now 35 ILCS 105/2a (West 1992)).) The term "pollution control facilities" is defined as:

"any system, method, construction, device or appliance *** sold or used or intended for the primary purpose of eliminating, preventing, or reducing air and water pollution as the term[s] *** [are] defined in the 'Environmental Protection Act' [Ill. Rev. Stat. 1989, ch. 111½, par. 1001 *et seq.*]." Ill. Rev. Stat. 1989, ch. 120, par. 439.2a (now 35 ILCS 105/2a (West 1992)).

■ We start from the premise that tax exemption provisions are strictly construed in favor of taxation (*Telco Leasing, Inc. v. Allphin* (1976), 63 Ill. 2d 305, 310, 347 N.E.2d 729, 731; *Follett's Illinois Book & Supply Store, Inc. v. Isaacs* (1963), 27 Ill. 2d 600, 606, 190 N.E.2d 324, 327) and that it is the taxpayer who bears the

burden of clearly proving his or her right to an exemption. (*United Air Lines, Inc. v. Johnson* (1981), 84 Ill. 2d 446, 455, 419 N.E.2d 899, 904; *Telco*, 63 Ill. 2d at 310, 347 N.E.2d at 731.) Furthermore, every presumption is against the intention to exempt property from taxation (*Johnson*, 84 Ill. 2d at 456, 419 N.E.2d at 904; *Telco*, 63 Ill. 2d at 310, 347 N.E.2d at 731-32; *Isaacs*, 27 Ill. 2d at 606, 190 N.E.2d at 327), and any doubts concerning the applicability of an exemption must be resolved in favor of taxation. *Johnson*, 84 Ill. 2d at 455, 419 N.E.2d at 904; *Isaacs*, 27 Ill. 2d at 606, 190 N.E.2d at 327.

■ With the forgoing in mind, we now address the first issue and conclude that the escort trucks and plastic liner are tax-exempt pollution control facilities under section 2a of the Use Tax Act (Ill. Rev. Stat. 1989, ch. 120, par. 439.2a). Because the language of section 2a of the Use Tax Act and section 1a in the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1989, ch. 120, par. 440a) is identical, a construction of either operates as an interpretation of both. (*Van's Material Co. v. Department of Revenue* (1989), 131 Ill. 2d 196, 201, 545 N.E.2d 695, 698.) We note that when the legislature enacted section 2a of the Use Tax Act and section 1a of the Retailers' Occupation Tax Act, it "intended to encourage diverse means for reducing pollution." See *Columbia Quarry Co. v. Department of Revenue* (1987), 154 Ill. App. 3d 129, 132-33, 506 N.E.2d 795, 798.

Because the language of section 2a is broad (*i.e.*, it encompasses "*any* system, method, device or appliance" (emphasis added) used or intended to eliminate, prevent, or reduce pollution), the courts have interpreted it broadly. (See, *e.g.*, *Wesko Plating, Inc. v. Department of Revenue* (1991), 222 Ill. App. 3d 422, 584 N.E.2d 162.) To qualify for an exemption, the "primary purpose" of a system, method, device or appliance must be to eliminate, prevent or reduce air or water pollution. (*Du-Mont Ventilating Co. v. Department of Revenue* (1978), 73 Ill. 2d 243, 248, 383 N.E.2d 197, 200; *Columbia Quarry Co. v. Department of Revenue* (1987), 154 Ill. App. 3d 129, 132, 506 N.E.2d 795, 798; *Shell Oil Co. v. Illinois Department of Revenue* (1983), 117 Ill. App. 3d 1049, 1052-53, 453 N.E.2d 125, 127.) In explaining the primary purpose test, the appellate court has stated that the "test seeks to determine the function and ultimate objective of the equipment alleged to be exempt, and only those facilities directly involved in the pollution abatement process are to be afforded special tax status." *Shred Pax Corp. v. Department of Revenue* (1990), 201 Ill. App. 3d 202, 206, 559 N.E.2d 492, 494, citing *Central Illinois Public Service Co. v. Department of*

*Revenue* (1987), 158 Ill. App. 3d 763, 767-68, 511 N.E.2d 222, 225; *Illinois Cereal Mills, Inc. v. Department of Revenue* (1976), 37 Ill. App. 3d 379, 381-82, 346 N.E.2d 69, 71.

Beelman submitted and the trial court considered uncontradicted evidence that the primary purpose of the plastic liner was to prevent hazardous waste from escaping from the dump trucks. Under section 2a, a business is entitled to an exemption for *any* system, method, device or appliance whose primary purpose is to eliminate, prevent, or reduce pollution. (See *Du-Mont Ventilating Co.*, 73 Ill. 2d at 248, 383 N.E.2d at 200 (and its progeny, cited above).) We agree with the trial court that, based on Beelman's uncontroverted evidence, the primary purpose of the plastic liner is to prevent contaminated soil from leaving the dump trucks and polluting the air and water. As a result, the trial court correctly found that Beelman was entitled to a section 2a tax exemption.

The State nonetheless counters that the primary purpose of the plastic liner is not to prevent or reduce pollution but rather to "aid in transportation" since it allows Beelman to avoid the time and expense of decontaminating its dump trucks between hauls. While this argument appears plausible on its face, a closer inspection reveals several flaws. First, there is nothing in the record, other than the State's bare assertion, to support its aid-in-transportation argument. Moreover, the State failed to proffer any counteraffidavits (or other evidence) to rebut Beelman's evidence showing that the primary purpose of the plastic liner was to prevent contaminated soil from leaking out and polluting the air and water.

Second, although the plastic liner undoubtedly does prevent the dump trucks from becoming contaminated (and hence prevents the need for decontamination), the State's argument that noncontamination is the primary purpose of the plastic liner proves too much. If a dump truck were contaminated by its contents, then the area around it would become contaminated. Additionally, if a dump truck were to overturn while it was raining or while there were high winds, it is likely that a certain amount of contaminated soil would blow or wash away without the plastic liner completely enclosing the cargo.

Thus, we conclude that the plastic liner meets section 2a's definition of a system, method, device, or appliance whose primary purpose is the prevention, elimination, or reduction of pollution. Our conclusion is tempered given that section 2a is to be broadly interpreted (*Wesko Plating, Inc. v. Department of Revenue* (1991), 222 Ill. App. 3d 422, 584 N.E.2d 162) and that the legislature intended

for the tax exemption to "encourage diverse means for reducing pollution." *Columbia Quarry Co. v. Department of Revenue* (1987), 154 Ill. App. 3d 129, 132-33, 506 N.E.2d 795, 798.

We now turn to address whether the escort trucks qualify for a section 2a tax exemption and conclude, as did the trial court, that Beelman's use of the escort trucks is part of an overall system of preventing or, in the event of a spill, reducing potential air and water pollution. The State relies on *Central Illinois Public Service Co. v. Department of Revenue* (1987), 158 Ill. App. 3d 763, 511 N.E.2d 222 (*CIPS*), in arguing that the escort trucks do not qualify as pollution control devices because they are primarily used for transportation. In *CIPS*, the appellate court denied CIPS an exemption for railroad cars that it had purchased to transport pollution-reducing chemicals for use in its scrubber system because the undisputed evidence showed that "the primary purpose of the cars was *transportation.*" (Emphasis added.) (*CIPS*, 158 Ill. App. 3d at 768, 511 N.E.2d at 225.) The State argues that the escort trucks are analogous to the railroad cars in *CIPS* and, therefore, not tax exempt. However, *CIPS* is clearly distinguishable from the instant case in that CIPS had purchased the railroad cars "*due to the problems inherent in [a prior] leasing arrangement [with the railroad].*" (Emphasis added.) (*CIPS*, 158 Ill. App. 3d at 768, 511 N.E.2d at 225.) Consequently, the court in *CIPS* concluded that the railroad cars' primary purpose was transportation. In the instant case, the uncontroverted evidence showed that Beelman uses the escort trucks as part of a system of preventing and reducing potential pollution. Lastly, it is worth noting that the railroad cars in *CIPS* are actually more analogous to the dump trucks used to haul the hazardous waste because the *sole* purpose of both is to transport matter. Beelman does not, however, contend that its dump trucks are pollution control facilities.

Next, the State argues that because the escort trucks *themselves* do not eliminate, prevent, or reduce pollution, they are not entitled to the tax exemption. We disagree. Under section 2a, a tax exemption exists for any "method" or "system" of eliminating, reducing, or preventing pollution. As the appellate court stated in *Wesko*:

"The term 'method' is synonymous with the term 'system.' (Webster's Third New International Dictionary 1422-23 (1986).) The common dictionary definitions of both terms incorporate the concept of an integrated process, a whole created by the interrelationship of component parts. (Webster's

Third New International Dictionary 2322 (1986).) *The inclusion of those broad terms precludes a construction of section 2a limiting its application based on the type or nature of the component part.*" (Emphasis added.) *Wesko*, 222 Ill. App. 3d at 426, 584 N.E.2d at 164.

The escort trucks, the drivers of the escort trucks, and the items carried in the escort trucks *taken as a whole* constitute a system/method of eliminating, preventing, and reducing pollution. In other words, the escort trucks are merely but *one component part* in Beelman's overall system/method of eliminating, reducing, and preventing pollution. Our previous decision in *Wesko* that section 2a's broad language precludes a narrow construction based on the nature of the component part (*Wesko*, 222 Ill. App. 3d at 426, 584 N.E.2d at 164) clearly applies in this case. Thus, Beelman is entitled to a tax exemption under section 2a for the escort trucks. Our conclusion is not only consistent with the plain language of section 2a, it is also consistent with the legislature's desire to encourage diverse means for reducing pollution through the use of tax exemptions. *Wesko*, 222 Ill. App. 3d at 426, 584 N.E.2d at 165; *Columbia Quarry*, 154 Ill. App. 3d at 132-33, 506 N.E.2d at 798.

The second issue to be addressed is whether the trial court correctly entered summary judgment in favor of Beelman. We find that summary judgment was appropriate and affirm the trial court. The sole function of the appellate court in reviewing a trial court's entry of summary judgment pursuant to section 2—1005 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005 (now 735 ILCS 5/2—1005 (West 1992))) "is to determine whether the lower court correctly ruled that no genuine issue of material fact had been raised and, if none was raised, whether judgment was correctly entered as a matter of law." (*Blankenship v. Dialist International Corp.* (1991), 209 Ill. App. 3d 920, 923, 568 N.E.2d 503, 505.) When the party moving for summary judgment (Beelman) files supporting affidavits containing well-pleaded facts and the party opposing the motion (the State) files no counteraffidavits, the trial court must accept as admitted the material facts set forth in the movant's affidavits. (*Blankenship*, 209 Ill. App. 3d at 924, 568 N.E.2d at 506.) Furthermore, when the party opposing the summary judgment motion "fails to controvert the proofs offered in support of the motion and the movant's showing of uncontradicted facts would entitle him to judgment as a matter of law, then summary judgment is proper." (*Blankenship*, 209 Ill. App. 3d at 924, 568 N.E.2d at 506.) In the instant case, the well-pleaded facts be-

fore the trial court established that the primary purpose of the plastic liner and the escort trucks was the prevention and reduction of pollution. Thus, the trial court determined, as a matter of law, that the items were tax-exempt pollution control facilities under section 2a. We conclude that the trial court correctly entered summary judgment in favor of Beelman.

For the aforementioned reasons, the judgment of the trial court is affirmed.

Affirmed.

LEWIS, P.J., and GOLDENHERSH, J., concur.