(No. 77420.—■■■■)

THE CHICAGO BAR ASSOCIATION, Appellant, v. THE DEPARTMENT OF REVENUE *et al.*, Appellees.

*Opinion filed November 23, 1994.*

Rene A. Torrado, Jr., of Vedder, Price, Kaufman & Kammholz, of Chicago (J. Robert Barr, Kevin M. Forde, Ellen M. Murphy, Charles A. Powell, John B. Simon and Joseph L. Stone, of counsel), for appellant.

No appearance for appellees.

JUSTICE HARRISON delivered the opinion of the court:

The Chicago Bar Association (CBA) appeals from a judgment of the circuit court of Cook County which affirmed, on administrative review, a decision of the Illinois Department of Revenue (the Department) holding that the CBA's new headquarters at 312 South Plymouth in Chicago were not exempt from real estate taxes under section 19.1 of the Revenue Act of 1939 (Ill. Rev. Stat. 1991, ch. 120, par. 500.1). Although the appeal was initially filed with the appellate court, that court transferred the case to us in accordance with Rule 365 (134 Ill. 2d R. 365) after concluding that the appeal should have been taken directly here under Rule 302(a) (134 Ill. 2d R. 302(a)). For the reasons that follow, we affirm.

The proceedings which gave rise to this appeal commenced in October of 1990, when the CBA filed a complaint with the board of appeals of Cook County pursuant to section 117 of the Revenue Act (Ill. Rev. Stat. 1991, ch. 120, par. 598), claiming that its new headquarters should be exempt from real estate taxes for 1990. The headquarters are located in condominium units constructed on a parcel of real estate adjacent to the John Marshall Law School in Chicago. The CBA asserted that these units should be exempt from real estate taxes by virtue of the statutory exemption for school property, defined by section 19.1 of the Revenue Act (Ill. Rev. Stat. 1991, ch. 120, par. 500.1) as

> "including, in counties of over 200,000 population which classify real property, property (including interests in land and other facilities) on or adjacent to (or adjacent to, except separated by a public street, alley, sidewalk, parkway or other public way from) the grounds of a school which property is used by an academic, research or professional society, institute, association or organization which serves the advancement of learning in a field or

fields of study taught by the school and which property is not used with a view to profit."

The board prepared and forwarded to the Department of Revenue a complete statement of all the facts in the case. (Ill. Rev. Stat. 1991, ch. 120, par. 600.) On September 5, 1991, the Department denied the requested exemption on the grounds that the primary use of the property was not educational and the property was not "in exempt ownership." The CBA then requested a formal hearing from the Department, which was held before an administrative law judge on January 21, 1992.

Based on the evidence adduced at that hearing, the administrative law judge found that the CBA is a professional organization whose primary purpose, as stated in its 1874 articles of incorporation, is to

"maintain the honor and dignity of the profession of the law, to cultivate social intercourse among its members and to increase its usefulness in promoting the due administration of justice."

It is exempt from Federal income tax, but not because of any charitable or educational purposes. Its exemption was granted under section 501(c)(6) of the Internal Revenue Code (26 U.S.C. § 501(c)(6) (1988)), which covers such groups as

"[b]usiness leagues, chambers of commerce, real estate boards, boards of trade, or professional football leagues ***, not organized for profit and no part of the net earnings of which inures to the benefit of any private shareholder or individual."

According to the administrative law judge's findings, the CBA holds a "fraternal order or association, for sale to members only" liquor license from the City of Chicago and maintains a large food service operation. In 1990, 34 of its 88 employees worked in food service, and a substantial portion of the headquarters' total square footage was devoted to food service. This included kitchens, restaurants, a bar, and buffet areas. The CBA

also holds itself out as being in the business of delivering food away from the building.

The property contains various meeting rooms, which the CBA rents to private law firms and other groups, including organizations which have no relation to the law. The rental fee, which ranges from $45 to $550 per day, is sometimes waived.

At the time relevant here, the CBA had approximately 22,000 members, only 800 of whom were law students. These included approximately 300 of the 1,100 students enrolled at John Marshall Law School, whose campus adjoins the property. The CBA and the law school had combined their libraries, but the library facilities were not housed in this property. They were located in one of the law school's buildings next door. Although the CBA's headquarters were eventually connected to that building by means of a sixth-floor walkway, the walkway was not in place during the 1990 tax year.

The CBA had 53 substantive law or practice committees, most of which held monthly lunch meetings in one of the building's meeting rooms. Several dozen other service and special committees met in the building at various times. In addition, the CBA had a Young Lawyers Section (YLS) which maintained 31 committees of its own. Among the activities organized by YLS committees were moot court and mock trial competitions for area law schools and tours of local courthouses for new members of the bar.

The administrative law judge also noted that the CBA sponsored over 170 continuing legal education courses a year. None of the courses, however, were of significant duration. Most lasted half a day or less. Because Illinois has no continuing legal education requirement, attendance at those courses did not help practicing attorneys meet State licensing requirements.

Furthermore, there was no evidence that John Marshall or any law school gave credit to its students during 1990 for having attended the CBA's courses or for participating on a CBA committee.

The CBA contended that it was entitled to the exemption it requested because its headquarters met all of the requirements of section 19.1 of the Revenue Act (Ill. Rev. Stat. 1991, ch. 120, par. 500.1), namely, they were located in a county of over 200,000 population which classifies real property; they were "adjacent to the grounds of a school," *i.e.*, John Marshall; they were used by a "professional organization" for "the advancement of learning in a field or fields of study taught by the school"; and they were "not used with a view to a profit," as those terms are used in the statute.

The administrative law judge did not take specific exception to any of these contentions. He opined, however, that for the school property exemption to apply, it was not enough that the parcel met the requirements of section 19.1 (Ill. Rev. Stat. 1991, ch. 120, par. 500.1). It also had to fall within the terms of article IX, section 6, of our constitution (Ill. Const. 1970, art. IX, § 6), which permits tax exemption only for that school property used "exclusively for *** school *** purposes." In the administrative law judge's view, the CBA's use of the property for the "advancement of learning" was not the same as using it "for school purposes," the CBA's headquarters could not be deemed a "school," and the organization "was not using its property primarily for school purposes, as contemplated by Article IX, Section 6 of the Constitution." Accordingly, he issued a proposal for decision (Ill. Rev. Stat. 1991, ch. 127, par. 1010—45) recommending that the property remain on the tax rolls for 1990.

The recommendation of the administrative law judge was approved by the Director of Revenue on June 11,

1992, and became the Department's final decision (Ill. Rev. Stat. 1991, ch. 127, par. 1010—50) in the matter. The CBA then filed an action in the circuit court of Cook County pursuant to the Administrative Review Law (Ill. Rev. Stat. 1991, ch. 110, par. 3—101 *et seq.*) to obtain review of the decision. The circuit court affirmed, declaring invalid that portion of section 19.1 of the Revenue Act (Ill. Rev. Stat. 1991, ch. 120, par. 500.1) which exempts from taxation real property adjacent to the grounds of a school. The circuit court found the "adjacent property" provision to be unconstitutional on its face because, in its view, it exceeded the scope of the school exemption permitted by article IX, section 6, of our constitution (Ill. Const. 1970, art. IX, § 6).

On this appeal, the CBA contends that the circuit court erred in declaring the disputed provision to be facially invalid. In addressing this issue, we must first eliminate any suggestion that the matter should not have been considered by the circuit court. This court has long recognized that where, as here, a statute is challenged on the grounds that it violates the constitution, the constitutional issues may be raised in the context of a complaint for administrative review. *Howard v. Lawton* (1961), 22 Ill. 2d 331, 333.

The principles governing the validity of statutory tax exemptions are well established. By designating the classes of property which may be exempted from taxation, section 6 of article IX has placed a restriction on the legislature's authority to exempt. (*MacMurray College v. Wright* (1967), 38 Ill. 2d 272, 276.) Accordingly, a property tax exemption created by statute cannot be broader than the provisions of the constitution, and no property except that mentioned in the exemption provisions of the constitution can be exempted by any laws passed by the legislature. *McKenzie v. Johnson* (1983), 98 Ill. 2d 87, 95; see also *City of Chicago v. Illinois Department of Revenue* (1992), 147 Ill. 2d 484, 493.

In ruling as it did here, the circuit court held that the "adjacent property" clause of section 19.1 violated these principles. It did so, according to the court, because it would allow an exemption for property adjacent to a school, provided the various statutory conditions have been satisfied, even though the adjacent property was not, itself, used "exclusively for *** school *** purposes" as article IX, section 6, requires.

If the circuit court's construction of the statute were accepted, its conclusion would be correct. The "adjacent property" clause of section 19.1 would be invalid on its face. In our view, however, the circuit court's analysis does not adequately consider that when evaluating the constitutionality of a legislative enactment, a court must presume that the statute is constitutional. (*People v. Johns* (1992), 153 Ill. 2d 436, 442.) The court is obliged to construe acts of the legislature so as to affirm their constitutionality, and all reasonable doubts must be resolved in favor of upholding a statute's validity. *People v. O'Donnell* (1987), 116 Ill. 2d 517, 521-22.

Following these principles, we do not believe that the "adjacent property" clause of section 19.1 should be construed as eliminating the requirement that property must in fact be used exclusively for school purposes in order to qualify for an exemption under section 6 of article IX (Ill. Const. 1970, art. IX, § 6). The language of the clause identifies the property entitled to the school exemption as "including" property adjacent to school which has certain specified characteristics. This clause parallels another portion of the statute which identifies the exempt property as also "including" student residence halls, dormitories, and other housing facilities for students and their spouses. The resident hall clause was reviewed by this court in the *MacMurray College* case (*MacMurray*, 38 Ill. 2d 272). There, as here, the claim was made that the clause was unconstitutional because

it exceeded the boundaries of exemption established by the constitution. Rejecting that contention, this court held that when the legislature inserted the clause, it "was speaking descriptively and illustratively and not with a declaratory intendment." (*MacMurray*, 38 Ill. 2d at 277.) Concluding that "[t]he statute does not seek to enlarge the area of constitutionally allowable exemption," the court refused to declare the clause unconstitutional. (*MacMurray*, 38 Ill. 2d at 277.) In so doing, it made clear that the party claiming an exemption under the statute still had the burden of showing clearly that the specific property was used exclusively for school purposes. *MacMurray*, 38 Ill. 2d at 277-78.

A similar conclusion was reached by this court more recently in *McKenzie v. Johnson* (1983), 98 Ill. 2d 87, 96-97, which involved a comparable clause in the statutory exemption for religious institutions (Ill. Rev. Stat. 1991, ch. 120, par. 500.2). That clause described property used exclusively for religious purposes as "including all such property owned by churches *** and used *** as parsonages." In concluding that this statutory parsonage exemption was not invalid as exceeding the exemption set forth in article IX, section 6, of the constitution (Ill. Const. 1970, art. IX, § 6) for property used exclusively for religious purposes, the court reasoned that the statutory provision

> "only lists parsonages to illustrate or describe one type of property that, under appropriate circumstances, may qualify for the general religious property exemption which tracks the language of article IX, section 6, of the Constitution. [The] *** parsonage exemption is subject to the exclusive-religious-use requirements of the Constitution and does not unlawfully enlarge the area of allowable exemptions." *McKenzie*, 98 Ill. 2d at 96.

Just as in *MacMurray* and *McKenzie*, we believe that the "adjacent property" clause in section 19.1 merely provides a description or illustration of a type of prop-

erty that may be entitled to exemption under article IX, section 6. It in no way modifies the limitations imposed by our constitution. The exclusive-school-use requirement of article IX, section 6, therefore still pertains. For this reason, a party seeking to invoke the exemption still has the burden of proving clearly and conclusively that the property in question not only falls within the terms of the statute under which the exemption is claimed, but also that it comports with the constitutional authorization. See *Board of Certified Safety Professionals of the Americas, Inc. v. Johnson* (1986), 112 Ill. 2d 542, 547.

The primary use of property, not its incidental uses, determines its tax-exempt status. (*MacMurray*, 38 Ill. 2d at 278.) This court has therefore held that property satisfies the exclusive-use requirement for tax exemption purposes if it is *primarily* used for the exempted purpose. (*McKenzie*, 98 Ill. 2d at 98.) There is no inherent reason why property which is adjacent to a school and which otherwise meets the conditions of section 19.1 cannot conform to this standard. Some parcels may well qualify as being used "exclusively for *** school *** purposes" as the constitution requires, while others will not. Whether a given piece of property is exempt will turn on the evidence showing how it is used. Accordingly, we cannot say that the "adjacent property" clause of section 19.1 is unconstitutional on its face. See *McKenzie*, 98 Ill. 2d at 100, 102.

Although the circuit court should not have declared the statute to be facially invalid, we nevertheless agree with its judgment affirming the Department's decision to deny an exemption for the CBA's headquarters. The circuit court noted that in the proceedings before the administrative agency, the entire focus of the CBA's presentation was on establishing compliance with the terms of section 19.1. It did not address the additional

question of whether the headquarters satisfied the constitutional requirement that the property be used "exclusively for *** school *** purposes." Rather, it assumed that property which met the statutory exemption fell within the constitutional authorization because, in enacting the statute, the legislature declared that it would.

This assumption is incorrect. Whether particular property is used "exclusively for *** school *** purposes" within the meaning of the constitution is a matter for the courts, and not the legislature, to ascertain. (*MacMurray*, 38 Ill. 2d at 276.) The legislature cannot, by its enactment, make that a school purpose which is not in fact a school purpose. See *People ex rel. Thompson v. First Congregational Church* (1907), 232 Ill. 158, 164.

Each individual claim must be determined from the facts presented. In applying the law to the facts, the court must be mindful that taxation is the rule. Tax exemption is the exception. Article IX, section 6 (Ill. Const. 1970, art. IX, § 6), and any statutes enacted under its provisions must be resolved in favor of taxation. *City of Chicago*, 147 Ill. 2d at 491-92.

In arguing that its headquarters meet the "school purposes" test, the CBA relies on *Association of American Medical Colleges v. Lorenz* (1959), 17 Ill. 2d 125. In that case, this court allowed an exemption even though the owner of the subject property was not itself a school, and no classes were taught there. The court noted, however, that the general purpose of the association which owned the property was to improve medical education in the United States, its only members with voting privileges were medical schools, and the property was "used solely in the conduct of [the association's] operations for improving educational standards at various medical schools, and for other activities incidental thereto." *Lorenz*, 17 Ill. 2d at 126.

The situation here is markedly different. The facts found by the administrative law judge show that the CBA is a professional organization whose headquarters serve primarily as a place where its members can meet and dine. The members are not themselves tax-exempt. (See *Board of Certified Safety Professionals*, 112 Ill. 2d at 546.) Moreover, to the extent that the property is used for educational purposes, that use is secondary and incidental. To allow an exemption under these circumstances would violate the constitutional requirement that the property be used "exclusively for *** school *** purposes." The exemption was therefore properly denied.

For the foregoing reasons, the judgment of the circuit court is affirmed.

*Affirmed.*