April 7, 1999

NO. 4-98-0554

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

XL DISPOSAL CORPORATION, INC.,          )   Appeal from

Plaintiff-Appellee,           )   Circuit Court of

v.                            )   Sangamon County

KENNETH ZEHNDER, Director of the        )   No. 97MR125

Department of Revenue, and              )

THE DEPARTMENT OF REVENUE,              )   Honorable 

Defendants-Appellants.        )   Donald M. Cadagin,

                                        )   Judge Presiding.

_________________________________________________________________

PRESIDING JUSTICE KNECHT delivered the opinion of the 

court:

Defendants, Illinois Department of Revenue (Depart­ment) and its Director, ap­peal from a determination by the cir­cuit court of Sangamon Coun­ty that plaintiff, XL Disposal Corpo­ration, Inc. (XL Disposal), was enti­tled to exemption from taxa­tion under the Use Tax Act (Act) (35 ILCS 105/1 
et seq. 
(West 1996)) because (1) the vehi­cles used in its gar­bage haul­ing busi­ness quali­fied as roll­ing stock used in inter­state commerce and as compo­nent parts of a pollu­tion-con­trol facility; and (2) a specific piece of equip­ment was part of a pollu­tion-control facil­ity.  We re­

verse the circuit court and af­firm the Department's de­ter­mination XL Disposal did not qualify for exemp­tion from taxa­tion.

I.  BACKGROUND

Following administrative hearings, on March 17, 1997, the De­part­ment ren­dered a determination of tax liability under the Act against XL Dis­pos­al.  XL Dis­posal paid under pro­test the sum of $187,513.14, the tax, penalty, and inter­est deter­mined by the Director of the Department to be due.  

On May 13, 1997, XL Disposal sought administrative re­

view in the cir­cuit court from the Department's determination pursuant to the Admin­istrative Review Law.  735 ILCS 5/3-101 
et seq. 
(West 1996).  XL Disposal asserted it was exempt from taxa­

tion under section 2a of the Act, pertaining to pollution-control facilities (35 ILCS 105/2a (West 1996)), and under section 3-55 of the Act, pertaining to rolling stock of an interstate carrier for hire (35 ILCS 105/3-55 (West 1996)).  The circuit court re­

versed the Department's decision to tax XL Disposal, finding the company qualified for the ex­emp­tions provided under both sections of the statute.  This appeal followed. 

The case was submitted to the Depart­ment at the ad­min­

is­tra­tive hearing on stipulated facts.  The sub­mis­sions on be­half of XL Disposal includ­ed two affi­da­vits of Ed Pruim, presi­dent of XL Disposal, and related exhib­its.  The De­partment sub­mitted only its notice of tax lia­bil­i­ty, which es­tab­lished its 
prima facie 
case.  See 
35 
ILCS 120/4 (West 1996); 
Elkay Manufac­turing Co. v. Sweet, 
202 Ill. App. 3d 466, 470, 559 N.E.2d 1058, 1060 (1990).  No live tes­ti­mo­ny was pre­sent­ed.

Evidence as to the nature of Xl Disposal's business is found solely in the affidavits of Pruim and is not disputed by the Department.  XL Disposal en­gaged in the busi­ness of pick­ing up, sort­ing, and disposing of garbage discard­ed by its resi­den­

tial, com­mercial, and municipal customers.  The garbage was of a "nonhaz­ardous" type "routinely produced" consisting of "waste food products from homes, restaurants and stores, paper products, yard waste, plastics, metal, glass," as well as "pack­aging *** toi­letries, soaps" and "cleaning materials" such as paint thin­

ners and disinfectants.  Pruim stated the household waste con­

tained some items, 
e.g., 
solvents, petroleum-based cleaning prod­

ucts, paint materials, thinners, preservatives, disinfec­tants, caustic clean­ers, shoe polish, dyes, and cleaning supplies, that were not classified as hazardous waste only because they were in such small quantities.         

XL Disposal used its vehicles and equipment to pick up garbage from its customers, separate out recyclables at one of its "transfer" stations, and take the garbage to final disposal sites, either recycling facilities or landfills it did not own.  Some of the landfill sites were outside the State of Illi­nois.  

The hauling aspect of XL Disposal's business is the focus of this case.  XL Disposal provided Dumpsters for its cus­

tomers to deposit and collect their garbage.  Then the company used garbage trucks, which it refers to as "packer" trucks, to collect the garbage and transport it to the transfer centers.  The packer trucks compacted the garbage under pressure to reduce volume for ease in transport and more efficient disposal.  The packer trucks were designed to prevent leak­age of liquids and control odors during transport.

At both of XL Disposal's transfer stations, the garbage from the packer trucks was combined and consolidated for hauling to landfills or, in the case of one of the transfer sites, sepa­

rated for hauling to a recycling facility.  In haul­ing the gar­

bage from the transfer sites, XL Disposal used two types of trail­ers, both pulled by truck cabs the company re­ferred to as "power units."  "Transfer" trailers looked like semi-truck trail­

ers but had mov­ing floors that allowed the units to be emptied with­out tipping on the uneven ground of a landfill.  The other trail­ers were "dump trail­ers," which looked and operated like the back half of a dump truck.  XL Disposal also purchased "tank trucks" for haul­ing hazard­ous waste.  The company did not have a license for hazard­ous waste disposal.  Pruim's affi­davit stat­ed these trucks were leased to other compa­nies that were au­tho­rized to dispose of haz­ardous waste.  Those companies are not identi­

fied in the record.  

Separate from its hauling operation, XL Disposal also purchased a wood shredder, known as a Grassan shredder.  Its pur­

pose was to reduce the bulk of wood and yard waste, making it more amenable to transportation and acceptance for disposal at the company's landscape waste compost site.

XL Disposal operated pursuant to numerous state and federal environmental, commercial, and transportation regu­la­tions.  The garbage collection services were performed pursuant to con­tract with the City of Chicago and suburban municipalities in Cook County.  Pruim stated the company's duties extended through ulti­mate disposal in approved landfills both in and out­

side Illi­nois.  He identified an exhibit attached to his affida­

vit as an example of conditions imposed upon the company by its contracts.  The exhibit is actually a set of specifications the City of Chi­cago provides for prospective contract bidders.  The record does not contain any actual contracts.  The exhibit in question re­quires the bidder to provide the name of the landfill to be used and requires assurances the bidder will comply with ap­pli­ca­ble gov­ernment regulations but does not allow the city to des­ig­nate a specific landfill to be used.  

The record also contains XL Disposal's authorization from the Illinois Commerce Commission (Commission) to haul waste with­in a 30-mile radius of Chicago.  XL Disposal also held cer­

tifi­cates from the Commission authorizing it to en­gage in vari­ous intrastate hauling.  The com­pa­ny was reg­is­tered as an ex­empt in­

ter­state car­ri­er by the Commis­sion and Pruim ad­mit­ted XL Dis­pos­al did not re­quire autho­rization by the Inter­state Com­merce Com­mis­

sion to haul gar­bage.

XL Disposal claimed exemption from the Act pur­su­ant to (1) the pollution-control exemption for all of its packer trucks, tractors or power units, transfer trailers, dump trail­ers, the Grassan shredder, and the hazardous-waste tank trucks; and (2) the exemption for roll­ing stock used in in­ter­state com­merce for all the equip­ment except the Grassan shred­der.  

The administra­tive law judge (ALJ) ruled on both of XL Dis­posal's claims as a matter of law after considering the evi­

dence in the record.  The ALJ ruled in favor of the Depart­ment on both claims and ordered XL Disposal to pay the taxes in ques­tion.  In announcing her decision, the ALJ noted while the facts pre­

sent­ed were un­con­tra­dicted, she need not ac­cept any conclusory state­ments or representations made in the company's affidavit that were not supported by docu­menta­ry evi­dence.  On March 17, 1997, the Director accepted the ALJ's recommended decision as dispositive of the issues, and on April 11, 1997, the Department issued its final tax assessment.

When XL Disposal filed a complaint for administrative review, the circuit court held, as a matter of law, both of the claimed exemptions applied to all the equipment claimed by the company.  The Department has appealed pursuant to section 3-112 of the Administrative Review Law.  735 ILCS 5/3-112 (West 1996).

II.  ANALYSIS

In reviewing a final decision under the Administrative Review Law, we review the administrative agency's decision and not the circuit court's determination.  
Richard's Tire Co. v. Zehnder, 
295 Ill. App. 3d 48, 56, 692 N.E.2d 360, 366 (1998).  An adminis­tra­tive agency's decisions on questions of fact are enti­

tled to def­erence and are reversed only if against the mani­fest weight of the evidence.  
Abrahamson v. Illinois De­partment of Pro­fes­sion­al Regu­la­tion, 
153 Ill. 2d 76, 88, 606 N.E.2d 1111, 1117 (1992).  Ques­tions of law decided by such an  agency are not enti­tled to def­er­ence and are re­viewed 
de novo.  Envirite Corp. v. Illinois Environ­mental Protection Agen­cy, 
158 Ill. 2d 210, 214, 632 N.E.2d 1035, 1037 (1994).  

On questions of mixed law and fact, an administrative agency's decisions are accorded deference.  
City of Belvidere v. Illinois State Labor Relations Board, 
181 Ill. 2d 191, 205, 692 N.E.2d 295, 302 (1998).  Where a case involves the examination of the legal effect of a given set of facts, the agency's determina­

tion should be af­firmed un­less clear­ly erro­ne­ous.  
City of Belvidere, 
181 Ill. 2d at 205, 692 N.E.2d at 302.  In this case, the facts surrounding XL Disposal's garbage haul­ing business are not in dispute; the issue is whether cer­tain ex­emp­tions pro­vid­ed by the Act apply to it.  The Department's decision that the ex­

emptions do not apply must be af­firmed by this court unless that conclusion is clearly erro­ne­ous.  XL Dis­posal asserts the 
de novo 
standard of review applies be­cause the only question is the legal conclusion to be drawn from the facts (see 
Richard's Tire Co., 
295 Ill. App. 3d at 56-57, 692 N.E.2d at 366).  We disagree and conclude the clearly erroneous standard of review is applica­ble.

Statutory exemptions to taxation such as those sought by XL Disposal are to be strictly construed in favor of taxation. 
Chicago Bar Ass'n v. Department of Revenue, 
163 Ill. 2d 290, 301, 644 N.E.2d 1166, 1171-72 (1994); 
Board of Certified Safety Pro­

fessionals of the Americas, Inc. v. Johnson, 
112 Ill. 2d 542, 547, 494 N.E.2d 485, 488 (1986); 
Richard's Tire Co., 
295 Ill. App. 3d at 58, 692 N.E.2d at 367.  The taxpayer seeking the ex­

emptions bears the burden of proving clear­ly and con­clu­sive­ly it is enti­tled to them.  See 
Chi­ca­go Bar Ass'n, 
163 Ill. 2d at 300, 644 N.E.2d at 1171; 
Board of Certi­fied Safety Profes­sion­als, 
112 Ill. 2d at 547, 494 N.E.2d at 488; 
United Air Lines, Inc. v. Johnson, 
84 Ill. 2d 446, 455, 419 N.E.2d 899, 904 (1981)
.  
Fur­

ther, in re­view­ing the Department's deci­sion, all facts and de­

batable ques­tions must be con­strued in favor of taxa­tion.  
Wyndemere Retire­ment Communi­ty v. Department of Reve­nue, 
274 Ill. App. 3d 455, 459, 654 N.E.2d 608, 611 (1995).

Section 3 of the Act imposes a tax on the privilege of using in Illinois tangible personal property purchased at retail.  35 ILCS 105/3 (West 1996).  Section 3-55 of the Act pro­vides an exemption where such property is used by interstate carriers for hire.  Section 3-55 provides in pertinent part:

"Multistate exemption.  To prevent actual

or likely multistate taxation, the tax im-

posed by this Act does not apply to the use

of tangible personal property in this State

under the following circumstances:

***

(c)  The use, in this State, by owners, 

lessors, or shippers of tangible personal pro-

perty that is utilized by interstate carriers

for hire for use as rolling stock moving in 

interstate commerce as long as so used by the

interstate carriers for hire."  35 ILCS 105/

3-55(c) (West 1996).  

The ex­emp­tion ap­plies even when the rolling stock oper­

ates en­tirely within Illi­nois so long as the shipment of the property being transport­ed be­gins or ends outside the state.  35 ILCS 105/3-60 (West 1996).  The ex­emption is available only to carri­ers for hire and not to private carri­ers.  See 
Square D Co. v. Johnson, 
233 Ill. App. 3d 1070, 1081-82, 599 N.E.2d 1235, 1241-42 (1992).  To qualify for the exemp­tion, XL Dis­posal must be an interstate carrier for hire.  

The question of whether a garbage hauler like XL Dis­

posal operates as a carrier for hire or a private carrier has recently been addressed in 
Admiral Disposal Co. v. Illinois De­

partment of Revenue, 
No. 2-98-0557 (February 1, 1999), ____ Ill. App. 3d ____, ____ N.E.2d ____ (second district).  The Illi­nois Com­mer­cial Trans­por­ta­tion Law (Law) also de­fines those terms.  625 ILCS 5/18c-1104 (West 1996).  Illi­nois courts have looked to that law's defini­tion of private car­rier in re­solving disputes which did not arise under that Law.  See 
Rus­sell v. Jim Russell Supply, Inc., 
200 Ill. App. 3d 855, 866, 558 N.E.2d 115, 124 (1990).  Consider­ation of the Law's defi­ni­tion of pri­vate car­ri­er and the well-reasoned deci­sion in 
Admi­ral, 
lead to the con­clusion XL Disposal is not a carrier for hire.

As noted by the Department, the Illinois leg­is­la­ture has clas­si­fied car­riers into three groups under the Law:  common carri­ers, con­tract car­riers, and private carriers.  See 625 ILCS 5/18c-1104(7) (defi­ning common carrier of prop­erty by motor vehi­

cle as someone who transports property for the gen­eral public over regu­lar or irregular routes), 18c-1104(8) (def­ini­ng con­tract car­ri­er of prop­erty by motor vehicle as some­one who trans­ports proper­ty with a limited number of shippers through assign­ment of vehi­cles or the design of specific servic­es), 18c-1104(27) (def­

ini­tion of pri­vate car­ri­er of prop­erty by motor vehi­cle) (West 1996).  Sec­tion 18c-1104(27) pro­vides:

"'Private carrier by motor vehicle' means

any person engaged in the transportation of

property *** other than for hire, whether

the person is the owner, lessee or bailee 

of the lading or otherwise, when the trans-

portation is for the purpose of sale, lease,

or bailment and in furtherance of the per-

son's primary business, other than transpor-

tation."  625 ILCS 5/18c-1104(27) (West 1996).

Essentially, "common" and "contract" carriers are in the business of transporting or shipping property for others while the trans­por­ta­tion provided by a "private" carrier is inci­dental to anoth­er purpose.  See 
Red Ball Motor Freight, Inc. v. Shannon, 
377 U.S. 311, 315, 12 L. Ed. 2d 341, 344, 84 S. Ct. 1260, 1262-63 (1964).  

 Intrastate common and contract carriers are subject to economic regulation by the Commission as per­sons en­gaged in the business of providing transportation for hire, where­as private carriers are not.  625 ILCS 5/18c-4101, 18c-4102(j) (West 1996).   Interstate common and contract motor carriers of prop­

erty for hire are also subject to economic regulation by the Interstate Commerce Commission, while private motor carriers are not.  
Interstate Commerce Comm'n v. Browning-Ferris Indus­tries, Inc., 
529 F. Supp. 287, 288-89 (N.D. Ala. 1981) ("Also exempt from the jurisdiction of the [Illinois Commerce Commis­sion] is the trans­por­ta­tion of property by motor vehicle by a person en­

gaged in a busi­ness other than transportation when the trans­por­

tation is within the scope of and furthers the prima­ry busi­ness of that person").

XL Disposal admitted it was not subject to Interstate Commerce Commission regulation by supplying its certificate of exemption from such regulation.  In addition, the Com­mis­sion, despite its jurisdiction over "all motor carri­ers of prop­erty operating within the State of Illinois" (625 ILCS 5/18c-4101 (West 1996)), has ex­empt­ed the trans­portation by motor vehicle "of waste having no com­mer­cial value to a disposal site for dis­

posal" (625 ILCS 5/18c-4102(i) (West 1996)) and "of waste from the fa­cil­i­ties of the gen­er­a­tor of the waste to a recognized recy­cling or waste[-]pro­cessing facil­ity when the gener­ator re­

ceives no di­rect or indi­rect com­pensa­tion from anyone for the waste and when the trans­portation is by gar­bage trucks with self[-]con­tained com­pact­ing devices, roll off trucks with con­

tain­ers, or vehicles or contain­ers specially de­signed and used to receive separated recyclables, and when the transporta­tion is an interim step to­ward recycling, reclamation, reuse, or disposal" (625 ILCS 5/18c-4102(m) (West 1996)). 

The Department's determination XL Disposal must be considered a private carrier is not erroneous.  XL Disposal pro­

vided garbage removal to its customers and not garbage shipping.  Hauling garbage to landfills or recyclers was part of the company's business but it did not make XL Disposal a carrier for hire.  Nothing in the record suggests the company's customers primarily contracted with XL Disposal to have their garbage shipp­ed to a spe­cif­ic loca­tion.  A generator of garbage com­monly does not know or care what happens to the garbage after it is picked up by the garbage haul­er.  XL Disposal offered no evi­dence to sug­gest its customers actually did know or care about the ulti­mate desti­na­tion of their garbage.  It held no value for them once XL Dis­pos­al picked it up.  Further, the gar­bage of any one of XL Disposal's cus­tom­ers did not re­main discrete to that cus­

tomer after it was placed in the packer truck and cer­tain­ly not after garbage from all packer trucks was accu­mu­lat­ed at the transfer site.   

XL Disposal also sorted the collected garbage for recy­

cling and, presumably, then received compensation for it from  recycling companies.  The record does not show this com­pen­sa­tion was passed along to XL Disposal's customers.  XL Dis­posal treated the recyclables from the garbage as if it were its own proper­ty.  XL Disposal did not meet its burden of demon­strating it was enti­

tled to the rolling-stock exemption and that the decision of the De­partment was erroneous.

XL Disposal also contends it was entitled to the pol­

lution-control-facilities exemption of the Act found in section 2a of the Act (35 ILCS 105/2a (West 1996)).  The Department's con­clusion XL Disposal was not entitled to the exemption is gov­

erned by the same standard of review as that applied to the roll­

ing-stock exemption, as it is also a question of mixed fact and law requiring an examination of the legal effect of a given set of facts.  See 
City of Belvidere, 
181 Ill. 2d at 205, 692 N.E.2d at 302.  Like­wise, XL Dis­pos­al, as the tax­pay­er seek­ing exemp­

tion, bears the burden of prov­ing clearly and con­clu­sively it is enti­tled to this exemp­tion.  See 
Chicago Bar Ass'n, 
163 Ill. 2d at 300, 644 N.E.2d at 1171.       

XL Disposal notes the legislature has shown its in­tent the pollution-control-facility exemption from taxation is to be broad­ly construed "to encourage diverse means for reduc­ing pol­lu­

tion."  
Columbia Quarry Co. v. Department of Revenue, 
154 Ill. App. 3d 129, 132-33, 506 N.E.2d 795, 798 (1987).  Therefore, it ar­gues, the usual requirement that the tax exemption provisions should be con­strued against the taxpayer and in favor of taxation is not controlling.  However, the cases XL Disposal relies upon for this argument do not support it.  See 
 Beelman Truck Co. v. Cosentino, 
253 Ill. App. 3d 420, 624 N.E.2d 454 (1993); 
Wesko Plating, Inc. v. Department of Revenue, 
222 Ill. App. 3d 422, 584 N.E.2d 162 (1991); 
Columbia Quar­ry, 
154 Ill. App. 3d 129, 506 N.E.2d 795.

In all three cases, while the courts discussed the legislative intent to encourage diverse means for reducing pollu­

tion, it was in the context of allowing various different systems developed to control pollution and all of their component parts to be allowed the tax exemption.  See 
Beelman Truck Co., 
253 Ill. App. 3d at 423-25, 624 N.E.2d at 456-57; 
Wesko Plating, Inc., 
222 Ill. App. 3d at 426, 584 N.E.2d at 164-65; 
Columbia Quarry, 
154 Ill. App. 3d at 132-33, 506 N.E.2d at 798.  The courts in these cases did not state the pol­lu­tion-control-facility tax ex­emp­tion should be stretched beyond the language of the statute to encom­

pass situa­tions where there was no real system of pollution con­

trol nor did they state the burden had shifted away from the taxpayer being required to prove it qualified for the exemption.

As previously noted, section 3 of the Act imposes a tax on the use in Illinois of tangible personal property purchased at re­tail.  35 ILCS 105/3 (West 1996).  Section 2a of the Act pro­vides the "purchase, employment[,] and transfer of such tangible personal property as pollution[-]control facilities is not a pur­

chase, use[,] or sale of tangible personal property."  35 ILCS 105/2a (West 1996).  Section 2a then defines "pollution[-]con­trol facilities" as:

"any system, method, construction, device

or appliance appurtenant thereto *** used

or intended for the primary purpose of 

eliminating, preventing, or reducing air

and water pollution *** or for the pri-

mary purpose of treating, pretreating, modi-

fying or disposing of any potential solid,

liquid or gaseous pollutant which if released

without such treatment, pretreatment, modi-

fication or disposal might be harmful, detri-

mental or offensive to *** life, or to pro-

perty."  35 ILCS 105/2a (West 1996).

    The exemption applies, first, if the vehicles in ques­

tion com­prise a "system" or "method" or if they are component parts of a "system" or "method" for combatting pollution.  Sec­

ond, the "primary purpose" of the vehicles must be to combat pollution.  

Obviously, the vehicles in this case do not constitute pollution-control facilities in and of themselves, but XL Dispos­

al argues they are parts of a system of pollution control and that pollution control was the primary business of the company and the purpose for which the vehicles were used.

The terms "system" and "method" have been construed as synonymous and as contemplating an "integrated process, a whole created by the interrelationship of component parts."  
Wesko Plating, 
222 Ill. App. 3d at 426, 584 N.E.2d at 164.  XL Dis­posal did not operate a system or method of controlling pol­lu­tion.  It did not treat or control potential pollutants found in its customers' garbage.  It only col­lect­ed and trans­port­ed gar­bage from one location to another where it may be treated or con­

trolled.  XL Disposal's facilities do not treat or control poten­

tial pol­lutants but only combine garbage from numerous pack­er trucks for ultimate transport to a landfill where it may be treated or con­trolled.  Some sepa­ra­tion for recy­cling also occurs but only the recycler and what it does with the recycled garbage actu­ally affect any pol­lu­tion abate­ment.  XL Dis­pos­al does not own the recycling operation or the landfill.

XL Dis­posal argues the com­pac­tion of gar­bage by its packer trucks helped to con­serve land­fill space.  This changes the shape of any potential pollutants but it does not 
treat 
the pol­lutants because they are still in existence in a different shape.  The contribution XL Disposal makes to conserv­ing landfill space is admirable but is not "pollution control."  Any pollut­

ants still exist but in a smaller and more concentrated form.

XL Disposal points to the precautions it took to elimi­nate odors and leakage from its trucks and transfer facilities and that at least some of these precautions were pursuant to state environmental regulations as evidence it was engaged in pollution abatement.  The fact these precautions might have con­

tributed to such abatement is not determinative in finding XL Disposal to be engaged in a system of pollution control, as the determinative factor is the primary pur­pose of the trucks and trans­fer fa­cil­i­ties.  

The pollution-control-facility tax exemption is limited by the primary purpose test.  
Du-Mont Ventilating Co. v. Depart­

ment of Revenue, 
73 Ill. 2d 243, 248, 383 N.E.2d 197, 200 (1978); 
Central Illinois Public Service Co. v. Department of Revenue, 
158 Ill. App. 3d 763, 768, 511 N.E.2d 222, 225 (1987).  The primary purpose, the function and ultimate objective, of the property for which the ex­emp­tion is sought must be pollution abatement.  
Cen­

tral Illinois Public Service Co., 
158 Ill. App. 3d at 768, 511 N.E.2d at 225; 
Shell Oil Co. v. Department of Revenue, 
117 Ill. App. 3d 1049, 1053, 453 N.E.2d 125, 128 (1983).  The test is not satisfied where property provides pollution-control benefits but such benefits were not the sole purpose for which the proper­ty was purchased.  
Shell Oil Co., 
117 Ill. App. 3d at 1053, 453 N.E.2d at 128; 
Illinois Cereal Mills, Inc. v. Department of Reve­

nue, 
37 Ill. App. 3d 379, 381-82, 346 N.E.2d 69, 71 (1976).  Fur­

ther, only property directly involved in pollution abatement qualifies for the exemption under the test.  
Shred Pax Corp. v. Department of Revenue, 
201 Ill. App. 3d 202, 206, 559 N.E.2d 492, 494 (1990); 
Cen­tral Illi­nois Public Ser­vice Co., 
158 Ill. App. 3d at 768, 511 N.E.2d at 225.                    

While pollution abatement may have been an ulti­mate re­

sult of XL Disposal's garbage col­lec­tion, pollu­tion abate­ment was not the business in which XL Dis­posal was engaged nor was it the primary purpose of the vehi­cles used by the compa­ny in its opera­

tions.  XL Disposal did not en­gage in the ultimate dis­posal or recycling of garbage itself.  It merely collected gar­bage, sepa­

rated out recyclables and hauled the gar­bage to land­fills that it neither owned nor operated.  The vehicles were pur­chased for the col­lecting and hauling of garbage and any pol­lu­tion-con­trol bene­

fits they pro­vided were incidental to their purpose in XL Disposal's business operations.

As for the tank trucks that XL Disposal stated it owned and leased to others to haul hazardous waste, no evi­dence was presented as to the identity of the companies leasing these vehi­

cles and no fur­ther information regarding their usage is in the re­cord.  XL Disposal has not met its burden of proving eli­gi­bili­

ty for tax ex­emption under either section of the Act.  

Finally, in regard to the Grassan shredder owned by XL Disposal, though the shredder reduced bulk and may have facil­

itated transportation and composting, nothing in the re­cord indi­

cated shredding wood or yard waste re­duced envi­ronmen­tal hazards that existed when those items were in a nonshredded state.  XL Dis­posal did not meet its burden of prov­ing the shred­der's eligi­

bili­ty for tax exemption under the pollu­tion-control-facility exemp­tion.

III.  CONCLUSION

We find XL Disposal did not meet its bur­den of clear­ly and conclusively proving it was enti­tled to ex­emp­tions from the  Act under either the rolling-stock exemp­tion or the ex­emption for pollution-control facili­ties.  The judg­ment of the circuit court is reversed and the deci­sion of the De­partment is affirmed.

Reversed.

COOK and STEIGMANN, JJ., concur.