# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Wendy's International, Inc. v. Hamer*, 2013 IL App (4th) 110678

---

| | |
|---|---|
| Appellate Court Caption | WENDY'S INTERNATIONAL, INC., Plaintiff-Appellant, v. BRIAN HAMER, in His Official Capacity as Director of the Department of Revenue; THE DEPARTMENT OF REVENUE; and ALEXI GIANNOULIAS, in His Official Capacity as Treasurer of the State of Illinois, Defendants-Appellees. |
| District & No. | Fourth District<br>Docket No. 4-11-0678 |
| Filed<br>Rehearing denied | October 7, 2013<br>November 6, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from plaintiff's creation of a subsidiary to serve as the insurer for plaintiff's nationwide chain of restaurants and the Department of Revenue's determination that the subsidiary was not an insurance company for purposes of Illinois income taxes and that plaintiff had to include the subsidiary's income in plaintiff's Illinois unitary business group, the trial court, in plaintiff's challenge of the Department's determination, erred in ruling in favor of the Department, since plaintiff established that the subsidiary was a *bona fide* insurance company for federal income tax law, the company was engaged in the necessary risk shifting and risk distribution, there was no evidence the subsidiary was a sham business or lacked a valid business purpose, and for purposes of the Illinois Income Tax Act, the subsidiary was entitled to be treated as an insurance company. |
| Decision Under Review | Appeal from the Circuit Court of Sangamon County, Nos. 08-TX-1/04, 09-TX-1/06; the Hon. John Schmidt, Judge, presiding. |

| | |
|---|---|
| Judgment | Reversed and remanded with directions. |
| Counsel on Appeal | David A. Hughes, of Horwood Marcus & Berk Chtrd., of Chicago, and Paul H. Frankel, Irwin M. Slomka, and Hollis L. Hyans (argued), all of Morrison & Foerster LLP, of New York, New York, for appellant. |
| | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Brian F. Barov (argued), Assistant Attorney General, of counsel), for appellees. |
| Panel | JUSTICE TURNER delivered the judgment of the court, with opinion. Justices Pope and Holder White concurred in the judgment and opinion. |

## OPINION

¶ 1    In 2004, the Department of Revenue (Department) issued two notices of deficiencies for corporate income taxes against plaintiff, Wendy's International, Inc. (Wendy's). In 2008, Wendy's paid the notices under protest and filed two separate actions against defendants, Brian Hamer, in his official capacity as the Department director; the Department; and Alexi Giannoulias, in his official capacity as Treasurer of the State of Illinois, seeking to enjoin the imposition of corporate income taxes. Both parties filed motions for summary judgment. In July 2011, the trial court allowed defendants' motion and denied Wendy's motion.

¶ 2    On appeal, Wendy's argues the trial court erred in finding Scioto Insurance Company was not an insurance company for Illinois income tax purposes. We reverse and remand with directions.

¶ 3                         I. BACKGROUND

¶ 4    Wendy's is an Ohio corporation having its commercial domicile in Ohio and the parent company of an affiliated group of corporations in the business of operating restaurants throughout the United States, including Illinois. In 2001, Wendy's conducted a feasibility study and determined it would be economically beneficial to self-insure its risks by creating a wholly owned insurance company to meet its insurance needs. By doing so, Wendy's would be able to obtain insurance coverage that was not readily available in the marketplace and reduce its insurance expenses. Moreover, it could obtain business interruption insurance to protect against losses relating to various contingencies, including the possibility of an outbreak of bovine spongiform encephalopathy (mad cow disease), which was of a concern to Wendy's and something Wendy's had been unable to obtain insurance coverage for in the past.

¶ 5        In accord with those plans, Wendy's formed and licensed Scioto Insurance Company in the State of Vermont as a "captive insurance company" that insured affiliated entities. For Scioto to be qualified as an insurance company under Vermont law, it had to be sufficiently capitalized to cover all of its insurance obligations, including insurance of catastrophic exposures. Scioto acquired Oldemark LLC, a Wendy's affiliate that held Wendy's trademarks. Oldemark licensed to Wendy's the right to use and sublicense the intellectual property used in Wendy's restaurants in exchange for a royalty of 3% of gross sales of all of its business units in the United States. The value of the transferred trademarks exceeded $900 million. In October 2001, the Vermont Department of Banking, Insurance, Securities and Health Care Administration (now the Vermont Department of Financial Regulation) licensed Scioto to transact business as an insurance company in the State of Vermont.

¶ 6        Scioto issued insurance policies to Wendy's and its affiliated groups and covered workers' compensation, general liability, auto liability, auto physical damage, property, crime liability, business interruption, excess liability insurance, product recall, terrorism coverage, strike insurance, pollution wraparound, and price volatility coverage. Scioto used actuarially determined rates to set the premiums it charged for its insurance policies. Scioto was included in Wendy's federal consolidated income tax returns.

¶ 7        In November 2004, the Internal Revenue Service (IRS) audited Wendy's federal consolidated returns for the years 2001, 2002, and 2003. As one of the issues under consideration, the IRS examined whether Scioto was an insurance company for federal income tax purposes. The IRS ultimately did not dispute Scioto's claimed status as an insurance company. The IRS also audited Wendy's federal consolidated federal income tax returns for the years 2004, 2005, and 2006, and it again did not dispute Scioto's status as an insurance company for those years.

¶ 8        Wendy's excluded Scioto from its Illinois unitary business group and Scioto's income was not included in the unitary business group's Illinois combined income tax returns from 2001 to 2006. In 2004, the Department commenced an audit of Wendy's Illinois combined income tax returns for 2001, 2002, and 2003. A second audit looked at the returns for 2004, 2005, and 2006. In the course of the audits, the Department considered the effect of the 2004 IRS audit of Wendy's International's federal consolidated return, in which the IRS did not dispute Scioto's claimed status as an insurance company and allowed it "loss reserve deductions," a tax benefit available to insurance companies.

¶ 9        The Department's audits concluded Scioto was not a true insurance company because (1) there was not actual risk shifting and risk distribution to constitute insurance for federal income tax purposes, (2) the majority of Scioto's income is derived from intercompany royalty income, and (3) it is not regulated in all states in which it writes premiums. As a result of the audit, the Department issued two notices of deficiencies for corporate income and replacement tax, penalty, and interest for the 2001 to 2003 tax years in the amount of $1,845,625 and for the 2004 to 2006 tax years in the amount of $645,688.

¶ 10        In 2008, Wendy's paid the notices under protest and filed two separate actions pursuant to the State Officers and Employees Money Disposition Act (Protest Monies Act) (30 ILCS 230/1 to 6a (West 2008); see also *Hartney Fuel Oil Co. v. Hamer*, 2012 IL App (3d) 110144,

¶ 30, 976 N.E.2d 682 ("the Protest Monies Act allows a taxpayer willing to pay under protest to avoid the administrative protest procedures provided by Illinois law")). In both cases, Wendy's alleged Scioto qualified as an insurance company under the Illinois Income Tax Act (35 ILCS 5/101 to 250 (West 2008)) and the uniformity clause of the Illinois Constitution (Ill. Const. 1970, art. IX, § 2) prohibited the Department from treating Scioto differently than other insurance companies.

¶ 11 In May 2011, Wendy's filed a motion for summary judgment. Wendy's claimed it was not required to include Scioto in its Illinois combined tax returns because Scioto is a *bona fide* insurance company. Also, Wendy's argued that since Scioto meets the definition of an insurance company under federal law, then the Department must treat it as one as well. Further, Wendy's claimed Scioto is engaged in the insurance business because it effectuates both risk shifting and risk distribution. As to the uniformity clause, Wendy's argued the Illinois Constitution prohibits treating a non-Illinois insurance company as anything other than an insurance company for Illinois tax purposes.

¶ 12 In June 2011, defendants filed a motion for summary judgment. They claimed Scioto does not meet the definition of an insurance company under the Internal Revenue Code and Scioto's royalty income is not part of an insurance business.

¶ 13 In July 2011, the trial court conducted a hearing on the cross-motions for summary judgment. Thereafter, the court entered a docket entry finding Scioto was not an insurance company pursuant to the Illinois Income Tax Act. The court allowed defendants' motion for summary judgment and denied Wendy's motion. This appeal followed.

¶ 14 II. ANALYSIS

¶ 15 A. Standard of Review

¶ 16 "Summary judgment is appropriate where 'the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Ioerger v. Halverson Construction Co.*, 232 Ill. 2d 196, 201, 902 N.E.2d 645, 648 (2008) (quoting 735 ILCS 5/2-1005(c) (West 2000)). Where, as here, cross-motions for summary judgment were filed, the parties "agree only a question of law is involved, and the court should decide the issue based on the record." *Farmers Automobile Insurance Ass'n v. Danner*, 2012 IL App (4th) 110461, ¶ 30, 967 N.E.2d 836. On appeal from a trial court's decision granting a motion for summary judgment, our review is *de novo*. *Bagent v. Blessing Care Corp.*, 224 Ill. 2d 154, 163, 862 N.E.2d 985, 991 (2007).

¶ 17 B. The Illinois Income Tax Act

¶ 18 Illinois imposes a tax on corporations for the privilege of earning or receiving income in Illinois. 35 ILCS 5/201(a) (West 2008). A taxpayer corporation doing business inside and outside the State must apportion its business income by a prescribed formula. 35 ILCS 5/304(a) (West 2008). "Apportionment is intended to assign the amount of income to a state that is proportional to the amount of income-producing activities in that state." *Automatic*

*Data Processing, Inc. v. Department of Revenue*, 313 Ill. App. 3d 433, 438, 729 N.E.2d 897, 902 (2000).

¶ 19 According to section 1501(a)(27) of the Illinois Income Tax Act (35 ILCS 5/1501(a)(27) (West 2008)), " 'unitary business group' means a group of persons related through common ownership whose business activities are integrated with, dependent upon and contribute to each other." A taxpayer corporation operating as part of an Illinois unitary business group is treated as a single taxpayer and must apportion its income to Illinois together with the income of the members of its unitary business group through a unitary combined return. 35 ILCS 5/502(e) (West 2008). The law prohibits including in an Illinois combined return affiliates that are required to apportion their business income pursuant to different subsections of section 304 of the Illinois Income Tax Act than other members of the unitary group. 35 ILCS 5/1501(a)(27) (West 2008). Under Illinois law, an insurance company is required to apportion its business income under a different subsection of section 304 than noninsurance companies, and thus it cannot be included in a combined report with its noninsurance company affiliates (35 ILCS 5/1501(a)(27) (West 2008)).

¶ 20 C. Is Scioto an Insurance Company Under the Illinois Income Tax Act?

¶ 21 Wendy's argues Scioto constitutes an insurance company for federal income tax purposes and therefore is one for Illinois income tax purposes. Defendants point out the Illinois Income Tax Act does not define an "insurance company" but note Illinois follows the federal definition. See 35 ILCS 5/102 (West 2008) (stating any term, not otherwise defined, shall have the same meaning as when used in a comparable context in the Internal Revenue Code). Defendants contend Scioto did not meet the federal test for an insurance company for the 2001 through 2006 tax years and thus its income was properly included with that of Wendy's unitary business group.

¶ 22 Our supreme court has stated taxation is the rule and tax exemption is the exception. *Chicago Bar Ass'n v. Department of Revenue*, 163 Ill. 2d 290, 301, 644 N.E.2d 1166, 1171-72 (1994). Accordingly, the taxpayer has the burden of proving it should be excluded from the unitary business group and the apportionment requirement. *Zebra Technologies Corp. v. Topinka*, 344 Ill. App. 3d 474, 484, 799 N.E.2d 725, 733 (2003); see also *National Commercial Title & Mortgage Guaranty Co. v. Duffy*, 132 F.2d 86, 88 (3d Cir. 1942) (stating the taxpayer has the burden of establishing that a particular corporation is an insurance company under the revenue laws).

¶ 23 1. *Taxable Years 2001 Through 2003*

¶ 24 In 1932, the United States Supreme Court held that "[w]hile name, charter powers, and subjection to state insurance laws have significance as to the business which a corporation is authorized and intends to carry on, the character of the business actually done in the tax years determines whether it was taxable as an insurance company." *Bowers v. Lawyers Mortgage Co.*, 285 U.S. 182, 188 (1932). Prior to 2004, Treasury regulation 1.801-3(a) (26 C.F.R. § 1.801-3(a) (2003)) defined an insurance company as follows:

"The term insurance company means a company whose primary and predominant

business activity during the taxable year is the issuing of insurance or annuity contracts or the reinsuring of risks underwritten by insurance companies. Thus, though its name, charter powers, and subjection to State insurance laws are significant in determining the business which a company is authorized and intends to carry on, it is the character of the business actually done in the taxable year which determines whether a company is taxable as an insurance company under the Internal Revenue Code."

For the 2001 to 2003 tax years, Scioto's income breakdown was as follows:

|  | 12/31/2001 | 12/31/2002 | 12/31/2003 |
|---|---|---|---|
| Premiums | 18,156,759 | 25,059,030 | 14,960,726 |
| Royalty Income | 47,157,394 | 207,384,178 | 217,620,152 |
| Interest Income | 108,757 | 5,543,883 | 13,772,406 |
| Total | $65,422,910 | $237,897,091 | $246,353,284. |

While Scioto's income from insurance premiums was dwarfed by its royalty and interest income, "it is not any percentage of income that determines whether a company is taxable as an insurance company but rather the character of the business actually done by the company." *Service Life Insurance Co. v. United States*, 189 F. Supp. 282, 285-86 (D. Neb. 1960). In this case, Scioto was licensed by Vermont as an insurance company. Scioto's only business was to furnish insurance to Wendy's and other affiliates. Its ownership of Oldemark, a disregarded entity for tax purposes, does not alter this conclusion since Scioto, unlike Oldemark, was not engaged in the business of licensing intellectual property. Moreover, Scioto's ownership of Oldemark was directly related to Scioto's conduct as an insurance company because it enabled Scioto to satisfy the capitalization requirements under Vermont insurance law. Looking at these facts leads to the conclusion that the character of Scioto's business was one of insurance. Thus, Scioto constituted a valid insurance company for federal income tax purposes for the 2001 to 2003 tax years.

### 2. *Taxable Years 2004 Through 2006*

In 2004, section 831(c) of the Internal Revenue Code (26 U.S.C. § 831(c) (2000)) was amended to define the term "insurance company" as having "the meaning given to it by section 816(a)." Under section 816(a), an insurance company is defined as "any company more than half of the business of which during the taxable year is the issuing of insurance or annuity contracts or the reinsuring of risks underwritten by insurance companies." 26 U.S.C. § 816(a) (Supp. Ill 2004).

For the 2004 through 2006 tax years, Scioto's income breakdown was as follows:

|  | 12/31/2004 | 12/31/2005 | 12/31/2006 |
|---|---|---|---|
| Premiums | 18,304,358 | 19,526,916 | 19,940,927 |
| Royalty Income | 234,470,739 | 231,413,458 | 327,546,586 |
| Interest Income | 18,228,723 | 27,658,079 | 42,566,583 |
| Total | $271,003,820 | $278,598,453 | $389,354,096. |

¶ 30    The bulk of Scioto's income during those three years came from the royalties and not the premiums. However, the facts and circumstances indicate Scioto was principally engaged in the insurance business during the 2004 to 2006 tax years. Its business was not one of licensing intellectual property. Scioto generated its own business income separate from the income of Oldemark. Thus, it would be inappropriate to consider the income generated from Oldemark as coming from Scioto. The facts indicate Scioto constituted an insurance company during the 2004 to 2006 tax years.

¶ 31                          3. *Risk Shifting and Risk Distribution*

¶ 32    Wendy's also argues Scioto is engaged in the insurance business because it effectuates risk shifting and risk distribution. Under federal tax law, insurance involves both risk shifting and risk distribution. *Helvering v. Le Gierse*, 312 U.S. 531, 539 (1941). It is "an agreement to protect the insured against a direct or indirect economic loss arising from a defined contingency whereby the insurer undertakes no present duty of performance but stands ready to assume the financial burden of any covered loss." *Allied Fidelity Corp. v. Commissioner*, 572 F.2d 1190, 1193 (7th Cir. 1978). Risk shifting "entails the transfer of the impact of a potential loss from the insured to the insurer." *Clougherty Packing Co. v. Commissioner*, 811 F.2d 1297, 1300 (9th Cir. 1987). Risk distribution involves spreading smaller risks over a large number to avoid the possibility that a single costly claim will exceed the amounts taken in as premiums and set aside for the payment of such a claim. *Clougherty*, 811 F.2d at 1300.

¶ 33    Courts have held an arrangement between an insurance subsidiary and other subsidiaries of the same parent qualify as insurance for federal income tax purposes, even if there are not insured policyholders outside the affiliated group, provided the requisite risk shifting and risk distribution are present. *Humana, Inc. v. Commissioner*, 881 F.2d 247, 255 (6th Cir. 1989). "Absent a fact pattern of sham or lack of business purpose, a court should accept transactions between related though separate corporations as proper and not disregard them because of the relationship between the parties." *Humana*, 881 F.2d at 255.

¶ 34    Here, Scioto was formed for the purpose of providing insurance to Wendy's and its affiliates. This included business interruption insurance to protect against losses from various contingencies, such as an outbreak of mad cow disease, for which Wendy's had been unable to obtain insurance coverage. Insurance coverage provided by Scioto also included workers' compensation, general liability, auto liability, auto physical damage, property, crime liability, excess liability insurance, product recall, terrorism coverage, strike insurance, pollution wraparound, and price volatility coverage. Polices were written, and the premiums charged were actuarially determined and reflected fair market rates.

¶ 35    The character of Scioto's business was one of insurance. Under federal income tax law, Scioto's insurance arrangements with its affiliates met the requirements of risk shifting and risk distribution. As Scioto was a provider of insurance contracts and engaged in the requisite risk shifting and risk distribution, it constituted an insurance company for federal income tax purposes.

¶ 36          4. *IRS Involvement, Federal Conformity, and Vermont Law*

¶ 37      Wendy's argues the IRS determined Scioto was an insurance company in separate audits. The IRS audited Scioto for the years 2001 through 2003 and treated it as an insurance company, even making adjustments to the company's loss reserves deductions consistent with that treatment. The IRS audited Wendy's for the years 2004 through 2006 and did not dispute Scioto's claimed status as an insurance company.

¶ 38      Wendy's also argues that if Scioto meets the definition of an insurance company under federal law, then defendants must treat it as an insurance company in accordance with the Illinois Income Tax Act. Wendy's relies on the testimony of tax expert and professor Richard D. Pomp, who prepared a report for the trial court and concluded Scioto is a *bona fide* insurance company under federal and Vermont law and should be similarly recognized under Illinois law. He explained the tax policy benefit of federal conformity as follows:

> "If Scioto were not recognized by Illinois as an insurance company the administrative and compliance benefits of conforming State law with federal law would be lost. Further, the advantages of predictability and certainty would be nullified and taxpayers would not be able to rely on federal law."

¶ 39      As Scioto has been organized as an insurance company by the State of Vermont and recognized as one by the IRS, the benefits of conformity with federal and state law exist here. Considering the advantages of predictability and certainty, Scioto should be treated as an insurance company for Illinois income tax purposes in a similar fashion as it has been treated by Vermont and the IRS.

¶ 40                    D. The Trial Court's Order

¶ 41      We find Wendy's has met its burden in this case. The facts indicate Scioto was a *bona fide* insurance company for purposes of federal income tax law as it met the requirements during the applicable years and engaged in the necessary risk shifting and risk distribution. No evidence indicates Scioto Insurance Company was formed as a sham business or lacked a valid business purpose. Given all of these facts, along with the treatment of Scioto by the IRS and the advantages of conformity with federal law, Scioto constituted an insurance company for federal income tax purposes and should have been treated in a similar fashion for purposes of the Illinois Income Tax Act. Thus, the trial court erred in granting summary judgment in favor of defendants and denying Wendy's motion for summary judgment.

¶ 42                    E. Uniformity Clause

¶ 43      Wendy's argues the trial court erred in not holding that the uniformity clause of the Illinois Constitution prohibited the Department from treating Scioto as anything other than an insurance company for Illinois tax purposes. As we have determined that the court erred in finding Scioto was not an insurance company, we need not address Wendy's uniformity clause argument.

¶ 44                            III. CONCLUSION

¶ 45       For the reasons stated, we reverse the trial court's judgment granting defendants' motion for summary judgment and remand for the issuance of an order granting Wendy's motion for summary judgment.

¶ 46       Reversed and remanded with directions.